---

## The Sue.

### (*District Court, D. Maryland.* February 2, 1885.)

1. CARRIERS OF PASSENGERS—SEPARATION OF PASSENGERS ON ACCOUNT OF RACE OR COLOR.

    On a night steam-boat, plying on the Chesapeake bay, colored female passengers may be assigned a different sleeping cabin from white female passengers.

2. SAME—ACCOMMODATIONS MUST BE EQUAL.

    The right to make such separation can only be upheld when the carrier, in good faith, furnishes accommodations equal in quality and convenience to both alike.

In Admiralty. Libel *in rem.*

*A. Stirling, Jr.,* and *Alexander Hobbs,* for libelants.

*John H. Thomas,* for respondent.

MORRIS, C. J. This suit (with three others of like character by other female libelants) has been instituted to recover damages on the

allegation that the libelant, who is a colored woman of unobjectionable character and conduct, and who had purchased a first-class ticket for a passage on the steam-boat Sue, in August, 1884, from Baltimore to a landing in Virginia, on the Potomac river, was refused proper first-class sleeping accommodations on board, and was in consequence compelled to sit up all night in the saloon, and experienced great discomforts. The answer of the claimants of the steam-boat alleges in defense that there was provided on board a sleeping cabin for white female passengers in the after part of the boat, and that a sleeping cabin equally good in every respect was provided forward, on the same deck, for female colored passengers, and that these libelants were told and well knew before they came on board that the regulations of the boat did not allow either class to intrude into the cabin of the other; that the libelants all refused to sleep in cabin provided for the colored female passengers, and preferred to remain sitting in the saloon all night rather than to go into it, claiming as matter of right to be allowed to go into the white women's cabin.

There are two issues raised: The first one of law, the libelants denying the legal right of the owners of the steam-boat to separate passengers for any purpose, because of race or color. The second is an issue of fact, the libelants denying that the forward cabin assigned to them was, in fact, equal in comfort and convenience to the after cabin assigned to white women.

In determining the question of law, it is to be observed that the steamer Sue is employed on public navigable waters, and plys between the port of Baltimore and ports in the state of Virginia, and that the regulations made by her owners and enforced on board of her, by which colored passengers are assigned to a different sleeping cabin from white passengers, is a matter affecting interstate commerce. It is, therefore, a matter which cannot be regulated by state law, and congress having refrained from legislation on the subject, the owners of the boat are left at liberty to adopt in reference thereto such reasonable regulations as the common law allows. *Hall* v. *De Cuir*, 95 U. S. 490. One of the restrictions which the common law imposes is that such regulations must be reasonable, and tend to the comfort and safety of the passengers generally, and that accommodations equal in comfort and safety must be afforded to all alike who pay the same price. The law of carriers of passengers in this respect is well stated in Hutch. Carr. § 542. He states the result of the decisions to be that, if the conveyance employed be adapted to the carriage of passengers separated into different classes according to the fare which may be charged, the character of the accommodations afforded, or of the persons to be carried, the carrier may so divide them, and any regulation confining those of one class to one part of the conveyance will not be regarded as unreasonable if made in good faith for the better accommodation and convenience of the passengers.

The precise question raised in this case, viz., whether a separ-

ation of passengers as to their sleeping cabins on board a steamboat, made solely on the ground of race or color, shall be held to be a reasonable regulation, has not to my knowledge been decided in any court. There have been cases arising from separations made in respect to day travel as to which there has been some conflict of views, and one or two cases have been cited in which such separations have been held unreasonable. *U. S.* v. *Buntin*, 10 FED. REP. 730, note; *Gray* v. *Cincinnati S. R. Co.* 11 FED. REP. 683, note. These differences of opinion, I think, may be explained, in part at least, by differences in the circumstances existing in different communities. It is, in my judgment, a mixed question of law and fact, and whenever it appears that facts do not exist which give reason for the separation, the reasonableness of the regulation cannot be sustained. But the great weight of authority, it seems to me, supports the doctrine that, to some extent at least, and under some circumstances, such a separation is allowable at common law, and I think it is not going too far to say that such is the decided leaning of the supreme court of the United States, as expressed in the opinion pronounced in *Hall* v. *De Cuir*. The supreme court appears to treat the question as one with regard to which reasonable usages which now exist, can only be controlled by legislation, and holds that if public policy requires such legislation, it must come from congress. It is the duty of all courts to declare the law as they find it to be, not as individual judges may think they would like it to be.

It has been urged by respondent's counsel that the evidence shows that explicit notice was given to the libelants when they bought their tickets, before going on board, that they would not be allowed to use the white women's sleeping cabin. As to this there is conflict of testimony; but the conflict is immaterial, for it is admitted by libelants that they well knew of the regulations from having, on previous trips on the same steam-boat, been denied access to the after cabin, and, of course, knowledge was equivalent to notice. But I think the whole issue is immaterial. The libelants paid full first-class price, and did not consent to any such regulation; and if the regulation was unlawful, they could not be held bound by it, even if specially indorsed on their tickets, and read to them. As to the reasonableness of this regulation I must decide upon the evidence in this case.

The steam-boat men called as witnesses testify that it is a regulation which has always existed on all the numerous night lines of steamers on the Chesapeake and adjacent waters. They give various facts to justify it, and declare that they are obliged to make it, in compliance with the demand of the great majority of their passengers. It must be admitted that a regulation, which a carrier may lawfully make, if reasonable, has strong argument in favor of its reasonableness if it is demanded by a great majority of the traveling public who use his conveyance. There was a time when every man on a railroad train who wanted to smoke assumed the right to do so in

every car except what was known as the "ladies'-car," but the demand of the majority of male passengers gradually compelled the enforcement of a regulation that there should be no smoking unless there was a car set apart for it. It has been argued that the constitutional amendments, which assured to colored people all the political rights of citizens of the United States and of the states, and were intended to forever obliterate color as a distinction with regard to political rights, of necessity made such a color discrimination unlawful in carriers as against the declared public policy of the nation. In view of the authoritative interpretations of those amendments, I cannot so hold. It is a question with which citizenship has but little to do. If it was found that naturalized citizens of English and of Irish birth, or the French and German nationality, interfered with such others' comfort, or with the discipline of the boat, when occupying the same sleeping cabins, the court might well find that a regulation which enforced separation between them was reasonable and therefore lawful. But to say that regulations based on differences of race or color may be lawful is not to say that every such regulation can be upheld. The regulation must not only be reasonable in that it conduces to the general comfort of passengers, but it must not deny equal conveniences and opportunities to all who pay the same fare. This discrimination on account of race or color is one which it must be conceded goes to the very limit of the right of a carrier to regulate the privileges of his passengers, and it can only be exercised when the carrier has it in his power to provide for the passenger, who is excluded from a place to which another person, paying the same fare, is admitted, accommodations equally safe, convenient, and pleasant.

This proposition of law, I am informed, was applied by my learned predecessor, Judge GILES, in a suit brought by a colored man who had been excluded from a street car. The street car company had arranged that every third or fourth car, and none other, should be exclusively for colored people, but Judge GILES held that this did not afford equal convenience to this class of citizens. And this leads to the important question of fact in the present case. The libelants testify that the forward cabin, which was assigned to their use, was offensively dirty; that the mattresses in the berths were defaced; that sheets were wanting or soiled, and that there were hardly any berths which had pillows; that there were no blankets and no conveniences for washing. They testify that from their own knowledge the white women's cabin was clean, pleasant, and inviting, and had none of these defects. They declare that on former trips they had found the forward cabin so intolerable that they sat up all night, and, finding it in the same condition this trip, they refused to remain in it, and being refused admission into the after cabin, again sat up all night. In these assertions they are supported by five other persons, all colored persons, to be sure, but respectable, and all having had similar opportunities of experience. They claim also that the ap-

proach to the stairway to the cabin assigned for their use was ob-
structed by cattle, and that there was no key with which their door
could be secured, and that its location did not compare in comfort
with the women's cabin aft. While allowing a good deal for the
inflamed feelings of these libelants and witnesses, who all testify un-
der feelings of resentment, I still am far from thinking that they
have, in a reckless spirit of vindictiveness, made up this story from
the whole cloth. Some things they complain of have been explained
away. To a woman accustomed to a comfortable bed on shore, a
night aboard ship is generally one of discomforts, and if the suf-
ferer thinks that some one else has better quarters on board, from
which she is unjustly excluded, there is no disposition to make the
best of what has been provided. As to any material or necessary
inferiority of location in respect to the forward cabin, I do not think
the libelants' case is made out. With regard, however, to the degree
of comfort and conveniences in the furnishing and cleanliness of the
forward cabin, as compared with the after one provided for the white
female passengers, notwithstanding the general denials of the officers
of the boat, and perhaps their intention that there should not be any
material difference, there is testimony which I cannot disregard. .

Whatever the general orders of the agents and officers of the boat
may have been in this respect, and however fair their general inten-
tions, as declared by them, may have been, I am quite convinced that
no disinterested person would have gone into the forward cabin in its
actual condition in August, 1884, who had the option of the other
one, quite irrespective of all questions of color or race. I think it
was considered by the persons who actually attended to the forward
cabin that less attention to it would suffice. It appears, too, that
there was a stewardess to attend to the after cabin, and that she did
not attend the forward one. The evidence of the ship's officers ad-
mit that there was a different system, in respect to this cabin, in giv-
ing out the bed-coverings. The reasons given by the officers for this
different system, they justify by showing that the much greater num-
ber of second-class colored passengers who used this cabin, as com-
pared with the smaller and more self-respecting second-class white
persons who used the after cabin, made a different system necessary,
and also made it much more expensive and difficult to keep the for-
ward cabin clean. I have no doubt of the truth of this; but it is no
legal justification for not giving as clean and convenient a sleeping
place to a first-class colored passenger as is given on the same ship
to a first-class white passenger. If a different system was necessary,
for any reason, the first-class colored passenger should not be made
to experience any difference in comfort on account of that system.
It seems to me only reasonable that some proper attendant should of-
fer to supply the things that were not in the cabin and which were
always placed ready for use in the after cabin, and not that the pas-
senger, on discovering the differences, should be obliged to hunt for,

and with difficulty supply, those things which the others had furnished to them without asking. The separation of the colored from the white passengers, solely on the ground of race or color, goes to the verge of the carrier's legal right, and such a regulation cannot be upheld unless *bona fide*, and diligently the officers of the ship see to it that the separation is free from any actual discrimination in comfort, attention, or appearance of inferiority. The right of the first-class colored passenger was to have first-class accommodation according to the standard of the after cabin on the same boat, and this, no matter what might be the difficulties arising from the greater number of second-class colored passengers. If it is beyond the power of the owners of the boat to afford this, then they have no right to make the separation. On many vehicles for passenger transportation, the separation cannot be lawfully made, and the right of steam-boat owners to make it depends on their ability to make it without discrimination as to comfort, convenience, or safety.

I pronounce in favor of the libelants, and will sign a decree for $100 in each case.