## HOUCK v. SOUTHERN PAC. RY. Co.

*(Circuit Court, W. D. Texas. November 16, 1888.)*[1]

CARRIERS OF PASSENGERS—DISCRIMINATION AGAINST COLORED PERSONS.

A railway company, in the management of its complicated interests, may be authorized in law,—on showing a proper or sufficient state of facts, to establish in the opinion of the court the reasonableness of the rule,—in setting apart one or more cars for the use exclusively of colored passengers, and a like number, more or less, as the service may require, for the use exclusively of white passengers; but whenever the company enforces such a rule the company is charged with the duty of furnishing to colored people who pay first-class fare cars to ride in that are as safe and comfortable in their conditions and appointments as the cars furnished to white passengers who pay first-class fare.[2]

*(Syllabus by the Court.)*

At Law. On motion for new trial.

Action by Lola Houck against the Southern Pacific Railway Company, for personal injuries. Judgment for plaintiff, and defendant moves for new trial.

*Wheeler & Rhodes* and *Labatt & Nobles*, for plaintiff.
*Waul & Walker*, for defendant.

BOARMAN, J. Plaintiff claims damages in the sum of $7,500 against defendant railway company for personal injury to Mrs. Houck. The undisputed evidence in the case shows that Mrs. Houck is a young married woman with some degree of negro blood in her veins; that casually looking at her or her husband it would be difficult to distinguish either of them from white persons; that she is a graduate of one of the high schools in Texas, where colored persons are educated for school teaching, and she and her husband were known at their home, Victoria, Tex., as respectable colored people; that she was, at the time mentioned in her petition, to some extent pregnant, but otherwise in good health; that,

---

[1] Publication delayed by failure to obtain copy of opinion at the time of its delivery.

[2] See, on the subject of discrimination against colored persons by carriers and others, McGuinn v. Forbes, 37 Fed. Rep. 639, and note.

having received a telegram stating that her infant child was very sick at the home of her mother in Galveston, she, anxious to see and be with her child, purchased at Victoria a ticket over defendant's line of railway, which entitled her to first-class passage from Victoria to Rosenburg,— about 90 miles; that the train which she entered at Victoria had but two passenger cars in it; one of them, the rear car, was set apart by the rules of the company for the accommodation, exclusively, of white people; the other, the front car, was known in Texas as the "Jim Crow Car," and was for the use of colored people, though white people often rode in it. It was a combination or compartment car, and was divided, unevenly as to length, into two divisions, which were separated by a partition with a door-way connecting the compartments. In one of these compartments passengers, white or colored, were allowed to smoke; in the other compartment smoking was forbidden by the rules, though these rules were often violated. The seats in the smoking division were inferior, uncushioned seats; those in the other division were good seats. Mrs. Houck, having purchased her ticket at Victoria, went upon the platform of the rear car to go inside of it, when the brakeman, meeting her at the door, forbade and denied her entrance thereto. He shut the door in her face, and locked it from the inside, and, holding the keys up against the door-glass, told her that he was inside and she was outside, and she could not come in because she was a negro. She remained on the platform, riding several miles, when the conductor came along and took up her ticket. He refused to allow her to go in the rear car, and told her to go into the first car, because the rules did not allow negroes to ride in the rear car, and, fearing she would follow him if he opened the door, passed his punch through a window in to the brakeman, and directed him to take up tickets, collect fares, etc.; then, going to the front, he left her on the platform. When the train reached the next stopping place the brakeman, keeping the front door locked against Mrs. Houck, took some passengers who wanted to enter the rear car around to the back door, to let them in. She followed them to the back door, thinking she could enter with them; but, on reaching the rear platform and attempting to go in the car, she was again prevented and kept out of it by the brakeman. The train starting before she had time to go back to the front platform of the car, she remained on the rear platform until the train reached the next station, when she went back to the front of the car, and endeavored again in vain to get inside. There was a number of unoccupied seats in the rear car, and she had previously ridden in the rear car of the train, or one reserved for white people by the company on the defendant's line; and she has since then ridden there without any question. When she went on the platform at Victoria she put a pot of plants or flowers on it, and when she returned from her ride on the rear platform, she asked the brakeman for it, and he said he had thrown it overboard, and spoke roughly to her. She, refusing to go in the "Jim Crow Car," rode on the platform until the train reached Rosenburg. It was an ugly, rainy September day, and she got wet while on the platform. The conductor said she acted "very ladylike" all the

time. This summary statement so far makes up the uncontradicted facts. Mrs. Houck, in her own evidence, says the brakeman during the time talked very roughly to her without any provocation; that he several times called the attention of men about the train to the fact that he had a negro riding on the platform; that one or more white people took her part, and remonstrated with the brakeman for treating her so rudely; that the front car had a rough lot of white and colored people in it, and some of them were boisterous and drinking; that the attention of those people had been directed to her by the language and acts of the brakeman, and she was afraid to go in among them; that the brakeman, when he kept her from entering the rear door of the rear car, pushed her, and she fell against the wheel of the brake, and but for her holding to the wheel she would have been thrown to the ground; that the brakeman in pushing her tore her dress in his effort to push her from the door. The brakeman denies these statements of Mrs. Houck. He said that when she had traveled before with him he did not know she was a negro, and he only knew she was a colored woman after the bootblack on the train told him about her being a colored woman. The statements of Mrs. Houck as to the brakeman calling attention of men about or in the cars to the fact that he had a negro riding on the platform; that her dress was torn; that white persons remonstrated with the brakeman,—are corroborated by a white passenger on the train with her.

The defendant contends that the evidence shows that the front car, which was set apart by the company for colored people, was as safe, and was substantially equal in its conditions to the rear car, to which she was denied entrance. These recitals make up the issues of law and fact. In accordance with the contention of defendant's counsel, the court charged the jury that a common carrier—a railway company—may or might be, under a proper showing of facts, justified and authorized in law, in the management of its complicated interests, in setting apart one or more coaches for the use exclusively of white people, and to set apart other cars for the use exclusively of colored people; but when the management undertakes to carry out such a rule it is charged with the duty of giving or furnishing to the colored passenger who pays first-class fare over the line a car to ride in as safe, and substantially as inviting, to travel in, as it (the management) furnishes to white passengers. The defense having shown some facts in relation to the population along the railway, and as to the kind and character of persons who often become passengers on their trains, which were thought by the court to be sufficient to authorize the management to require by its rules that the rear car, or one of the cars in the train should be kept exclusively for white people, the jury were directed to consider, for the purpose of this case, that the defendant company was justified in law in the enforcement of such a rule, and the plaintiff cannot complain of any injury coming to her because she was denied entrance to the rear car, provided it was shown satisfactorily to them that the car into which Mrs. Houck was told to go by the conductor was as safe and substantially as comfortable in its conditions as the car to which she was denied admission. Hav-

ing so advised the jury, the issue of fact disclosed by the evidence as to the relative comfort of the two cars,—the rear and front one,—was submitted to them. They were charged, if they found against defendant company on that issue, they should find for the plaintiff in such a sum as will repair the injuries which came to Mrs. Houck in consequence, proximately, of the defendant's wrongful acts.

Counsel for plaintiff contended that the facts showed that the sickness, which confined Mrs. Houck to her bed for some weeks, was caused by the wrongful acts of the company's officers on the train. The court directed the jurors' attention to this contention of plaintiff's counsel, and charged them that they should hold defendant liable only for such injuries sustained by Mrs. Houck as came to her in consequence of the rude and wrongful acts of the brakeman; and that they should not charge defendant with any injury or sickness which was caused by her riding or being exposed on the platform for so long a distance, because, if she remained on the platform in the rain, and became sick in consequence thereof, she, by her own negligence in not going to a better place for protection against the rain and weather, was at fault; that if the miscarriage and illness was caused, not by the mental irritation, humiliations, annoyances, and rude acts caused by the faults and wrongs of the brakeman, but by the physical discomforts and fatigue which her ride, unseated, on the platform, gave her, she could not recover for the injury inherent in the illness of the miscarriage.

This presentation of the case shows two issues of fact. The jury by their verdict are shown to have decided both of these issues in favor of plaintiff. They gave plaintiff $5,000 damages—$2,000 for punitive damages, and $3,000 for actual damages. The evidence in the case impressed me with the thought that the car in which Mrs. Houck was directed to ride was in itself nothing like as comfortable to ride in as the car kept exclusively for white people, and that the "Jim Crow Car" was occupied by boisterous passengers, both white and colored, who were smoking and drinking, as is usually the case in such cars, and was in no way as inviting to travel in as the rear car, to which plaintiff was denied entrance,—notwithstanding the ticket agent, knowing her to be a colored woman, had sold her a first-class ticket,—because she is a negro. I thought the evidence unquestionably showed that the brakeman treated plaintiff, who "acted all the time in a lady-like manner," rudely, wrongfully, and, in some degree, maliciously. But I do not think the jury were warranted by the facts in allowing $3,000 for actual damages, because it was not at all clear that the miscarriage or illness was of a serious nature; nor was it made sufficiently clear that either the miscarriage or illness came to Mrs. Houck proximately in consequence of the acts of the brakeman, or of the conductor, in denying her admission to the rear car. It was shown by the defendant's testimony that the brakeman was not discharged because of his rude treatment of plaintiff; but, on the contrary, he was promoted by the railway company to a higher place in the service. The company did not deny that the rear car was set apart exclusively for white passengers, and admitted that the brakeman was acting under orders when he

excluded Mrs. Houck from the rear car because she was a negro. I shall now refuse a new trial, but will grant one in case the plaintiff within 10 days does not enter a *remittitur* of $2,500 in the item for actual damages.