CASE 36.—ACTION BY J. ALEXANDER CHILES AGAINST
C. & O. RAILROAD CO. FOR DAMAGES FOR
EJECTING HIM FROM A CAR SET APART FOR
WHITE PASSENGERS, BECAUSE OF HIS COLOR.
April 16.

# Chiles v. Chesapeake & Ohio Ry. Co.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for defendant. Plaintiff appeals. Affirmed.

Civil Rights—Carriage of Passengers—Rules of Carrier—Separate
Apartment for Colored Passengers.—A railroad company
may, independent of statute, adopt and enforce rules and
regulations requiring colored passengers, although they may

be interstate passengers, to occupy compartments in coaches separate from those occupied by white passengers, if they are substantially equal in quality and accomodations to those furnished white passengers having similar tickets.

B. E. SMITH AND J. ALEXANDER CHILES for Appellant.

C. J. BRONSTON AND ALLEN & DUNCAN of Counsel.

## PRINCIPLES AND THE LAW RELIED UPON TO SUSTAIN SAME.

1. New trial will be granted when court errs to the substantial rights of the appellant. (Hurt v. L. & N. R. R. Co., 25 Ky. Law Rep., 755; Ellis v. Ellis, 20 Ky. Law Rep., 438; Burns v. McGibbens, 9 Ky. Law Rep., 411; McGee's case 3 J. J. Marshall 549).

2. and 3. New trial will be granted when the verdict is palpably and clearly against the evidence; when it shows bias and prejudice. (Stover v. Jones, 20 Ky. Law Rep., 1369; L. & N. R. R. Co. v. Mitchell, 87 Ky., 327; Taylor v. Arnold, 13 Ky. Law Rep., 516; Searcy v. Hanks, 13 Ky. Law Rep., (Abstract) 306; Curry v. Vetters, 15 Ky. Law Rep., (Abst) 494; Steele Heirs v. Logan 3 A. K. Marshall, 394; McCoy v. Martin, 4 Dana, 580; Page v. Carter, 8 B. Monroe, 192; Empire Coal Mining Co. v. McIntosh, 82 Ky., 554; Hemstein v. Dupee, 24 Ky. Law Rep., 886; Mobile v. Ohio Co. Recvr., 25 Ky. Law Rep., 2236; L. & N. R. R. Co. v. Bates, 15 Ky. Law Rep., 724).

4. New trial will be granted when improper testimony has been admitted, and relevant testimony excluded. (L. & N. R. R. Co. v. McCoy, 81 Ky., 403; Coleman v. Allen 3 J. J. Marshall, 229; Ky. Code, sec. 340, subsec. 8; Scott v. Colmesnil 7 J. J. Marshall 416; McLeod v. Ginther's Admx., 80 Ky., 399; Sherley v. Billings, 71 Ky., 147).

5. New trial will be granted when improper and misleading and erroneous instructions are given. (Thompson v. Thompson, 17 B. Monroe, 22; Bell v. North, 4 Little, 133; Berry v. Branaham, 3 Ky. Law Rep., (Abstract) 756; Carrier v. Howard, 11 Ky. Law Rep., (Abstract) 443; Phelps v. Taylor, 4 T. B. Monroe, 170; Quisenberry's Devisees v. Quisenberry's Heirs, 14 B. Monroe, 481; Farmers Natl. Bank v. Wilkerson, 1 Ky. Law Rep., 351; Bonte y. Postell, 22 Ky. Law Rep., 583; Givens v. L. & N. R. R. Co., 24 Ky., 1796; Stanford v. Hussey, 17 Ky. Law Rep., 1194).

6. New trial should be granted when the court failed to give

the instructions asked for, upon interstate phase of the case, and did not couch substantially the law in its instruction. (Curry v. Spencer, 5 Interstate Commerce Commission, Report, 636; Hall v. DeCuir, 95 U. S., 495; Plessy v. Ferguson, 163 U. S., 537; State Ex Parte Abbott v. Hicks, 44 La. Annual 770; Anderson v. L. & N. R. R. Co., 62 Fed. Rep., 46; L. & N. O. T. R. v. Miss., 66 Miss., 662; Second Interstate Commerce Rep., 615 and 801).

7. New trial should be granted, and finally case should be reversed, when the evidence of this trial showed, both under Federal and State law that equal accomodation had not been provided. (C. & O. R. R. Co. v. Commonwealth of Ky., 179 U. S. Supreme Court, 368; Brown v. Memphis and C. & O. R. R. Co., 5 Fed. R., 499; Gray v. Cincinnati Southern R. R., 11 Fed., 683; Houck v. S. P. R. R. Co., 38 Fed. Rep., 226; The Sue Fed. Rep., 22, 843; Murphy v. Western A. R. R. R. Co., 22 Fed. Rep., 637; O. V. Ry. Co. Recvr. v. Landers, 20 Ky. Law Rep., 913; Day v. Owens, 5 Mich., 520; Conger v. N. W. Packet Co., 37 Iowa, 145; Green v. City of Bridgetown, 9 Century Law Journal, 206; C. & O. Ry. Co. v. Williams, 55 Ill., 185; C. N. O. & T. R. R. Co. v. Bell, 25 Ky. Law Rep., 10; L. & N. R. R. Co. v. Commonwealth of Ky., 27 Ky. Law Rep., 176; Commonwealth of Ky. v. L. & N., 27 Ky. Law Rep., 933; L. & N. R. R. Co. v. Vincent, 29 Ky. Law Rep., 1409; Ky. Statutes Chap. 32, sec. 795 and 796).

JNO. T. SHELBY, for Appellee.

### POINTS AND AUTHORITIES.

A regulation of a railway company requiring white and colored passengers in Kentucky to ride in separate coaches is reasonable, and the carrier has a right to enforce compliance with such regulation. (Ohio Valley Railway's Receiver v. Lander, 104 Ky., 431; Hall v. DeCuir, 95 U. S., 485; Roberts v. Boston, 5 Cush., 198; Britton v. A. C. Airline Ry. Co.; 6 Cyc., 545).

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Affirming.

Appellant, a negro, bought a first-class ticket over the appellee's line of railway from Washington, District of Columbia, to Lexington, Ky. At Ashland,

Ky., on the line of railway between Washington and Lexington, all passengers for Lexington, except those occupying sleeping cars, are required to leave the train on which they come from Washington and get on a train that leaves Ashland for Lexington. When the Washington train, upon which appellant was a passenger, arrived at Ashland, in company with the other passengers in the day car in which he was riding, he got out for the purpose of getting on the Lexington train. This Lexington train is made up of four coaches, the first, and the one nearest the engine, being a combined baggage, mail, and express car. The second is a passenger coach, divided by board partitions, into three compartments. One of these compartments located in the end of the car is set apart for colored passengers, the middle compartment is for the use of colored passengers who smoke, and the end compartment is for the accommodation of white persons who smoke. The third car is a passenger coach intended for the use of white ladies and gentlemen. The fourth is a sleeping car that runs through from Washington to Lexington. Appellant, when he attempted to get on the Lexington train, was told by the brakeman to go in the colored apartment. This he declined to do, and walked in and took a seat in the third coach set apart for the exclusive use of white passengers. In a few moments the conductor came in and asked the appellant in obedience to a rule of the company to go forward in the apartment set apart for colored passengers, but he refused to do so, stating that he had bought a through first-class ticket from Washington to Lexington, and was an interstate passenger who knew his rights, and that the separate coach law of Kentucky did not apply to him, and declared his intention of retaining the seat he occu-

Chiles v. Chesapeake & Ohio Ry. Co.

pied. Therupon the conductor summoned a police-
man, who also requested appellant to go in the other
car, and, upon his refusal, he was informed that he
would be compelled to leave the car in which he was
seated. Appellant, yet insisting upon his right to re-
main in the car in which he was, followed the police-
man into the colored passenger coach.

Afterwards he brought this action against the com-
pany for damages, alleging in his petition that he had
purchased in Washington a first-class ticket for trans-
portation to Lexington, Ky., and that he was forcibly
and wrongfully ejected from the first-class car in
which he was seated, thereby subjecting him to great
mortification and humiliation, to his damage in the
sum of $10,000. In its answer appellee set up that the
car from which appellant was required to remove at
Ashland was one set apart under its rules and regula-
tions exclusively for the transportation of white pas-
sengers, and the car into which he was compelled to
go was under its rules and regulations set apart ex-
clusively for the accommodation and transportation
of colored persons; that it was a first-class car, equal
in quality, convenience, and accommodation to the car
appellant was directed to remove from. A reply was
filed, controverting the affirmative matter in the an-
swer, and upon a trial before a properly instructed
jury a verdict was returned for appellee.

There is really no material issue of fact involved
in the case. No force or violence, or rude or oppres-
sive conduct, was employed by the agents of appellee
in removing appellant from the car in which he was
seated to the car set apart for colored persons; and,
except that the car into which he was removed is
divided by partitions into three compartments, it was
substantially equal in quality, convenience, and ac-

commodation to the car in which he first seated himself, and the compartment into which appellant was directed to go was clean and ample for his accommodation, and equipped with the same convenience as the other passenger coach on the train from which he was ejected. It is admitted that section 795-801 of the Kentucky Statutes, requiring all railroad companies to furnish separate coaches for transportation of white and colored passengers, and imposing upon the company and conductors a penalty for refusing or failing to carry out the provisions of the law, does not apply to appellant, who was an interstate passenger; it being conceded that the statute is only operative within the territorial limits of this State, and effective as to passengers who travel from one point within the State to another place within its border. The queston presented for our consideration is: Has a common carrier, such as a railroad company, the right, independent of the statute, to establish reasonable rules and regulations for the transportation of passengers, and to establish such rules and regulations as will require white and colored passengers, although they may be interstate, to occupy separate coaches or compartments upon the train? To put it in a simpler form, and one that will present squarely the issue involved: Has a railroad company within this State, independent of any statute, the right to adopt and enforce rules and regulations requiring colored passengers, although they may be interstate, and solely because of their color and race, to occupy coaches or compartments in coaches separate and distinct from those ocupied by white persons? Both of these queries must be answered in the affirmative. A passenger who purchases a ticket entitling him to transportation on a railroad, and who conducts himself properly, and

is not laboring under any mental or physical infirmity or disease that would render it unsafe, improper, or dangerous to carry him, has the right to demand that the carrier shall furnish him with accommodations and conveniences substantially equal to those given to other passengers holding similar tickets; but, subject to these qualifications, a railroad company may adopt and enforce reasonable rules and regulations for the transportation of passengers, such as requiring that those who smoke shall occupy a certain car or compartment, or that gentlemen not accompanied by ladies shall take a car other than the one set apart for the exclusive use of ladies. Many other regulations not here necessary to mention may be made; the rule being that the passenger takes his ticket with the understanding that he will conform to all the reasonable regulations of the carrier as to the conduct of the carriage, it being understood and recognized as the law that the carrier assumes the responsibility of the reasonableness of the regulation, and, if it should be held unreasonable, the carrier will be liable in damages to the passenger against whom it was enforced. Hutchison on Carriers, section 1077. In 6 Cyc. p. 545, the rule, supported by numerous authorities, is thus stated: "Without regard to any statutory authority, a carrier of passengers has under the common law the right to make reasonable rules and regulations for the conduct of his business. The passenger is not bound to comply with the rules and regulations if they are unreasonable, but such rules as tend to the comfort, order, and safety of the passenger or passengers may be made and enforced, if reasonable with reference to the subject-matter and uniform in respect to the persons affected. As the validity of a regulation does not depend upon contract, express or implied, but

upon the general power of the carrier to control his business, therefore there is not the necessity which exists with reference to a special contract regulation of bringing it home to the passenger so that his assent thereto shall appear. The passenger is bound to take notice of reasonable regulations.''

Resting upon this ancient and general doctrine of the right of carriers to establish reasonable rules and regulations for the transportation of passengers, it has come to be a well-settled principle of law that in the carriage of white and colored passengers carriers have the right, independent of any statute, to enact rules and regulations requiring colored persons, solely because of their race and color, to occupy coaches and compartments in coaches separate and distinct from those set apart for and occupied by white persons. And this rule extends to all passengers, without refer-ence to whether they are intrastate or interstate. This principle does not distinctly involve a discrimination against the colored race, but rests more particularly upon the right to separate and classify the races, affording to each substantially equal comforts, conveniences, and accommodations. Carriers cannot discriminate against a passenger merely because of his color. The colored man who conducts himself properly, and in other respects has the right to be received as a passenger, and who purchases a first-class ticket, is entitled to demand that the carrier shall furnish him carriage substantially similar in quality, convenience, and accommodation to that afforded to white persons having similar tickets. But, whilst the carrier cannot in the manner of service or accommodations discriminate between passengers holding similar tickets solely on account of their color, it has the right to separate and classify them. There is a wide difference between

classification and regulation involving a separation of the races and a discrimination between them.    When there are two cars in a train, or two compartments in a car, substantially alike in quality, convenience, and accommodation, neither white nor colored passengers have the legal right to complain that they have been discriminated against merely because the carrier required each race to occupy a car or compartment set aside for its accommodation.    And this upon the ground that the carrier in the conduct of his business, and in the interest of the public, may enact and enforce reasonable rules and regulations to preserve peace, maintain order, promote comfort, and contribute to the pleasure and convenience of the passengers.    That there is a natural, well-marked difference between the white and colored races goes without saying.    That this racial distinction in many places and with many persons develops into a deep-seated antipathy between the races, resulting too often in conflict and bloodshed, is a matter of common knowledge.    For this distinction, the consequences that flow from it, and the difficult problems that grow out of it, appellant is in no wise responsible.    It had its origin in the creation of the races, and is firmly established as a part of the social and domestic order and economy of the country, and the man or set of men of either race who attempts to ignore or obliterate these distinctions and differences undertakes an impossible task.    This racial distinction, and the resulting classification, is recognized by legislatures, authorized by courts, sanctioned by custom, and approved by an enlightened public opinion.    It is not confined to any community, State or nation, but is found wherever the two races abound in sufficient numbers to make noticeable the impassable chasm that separates them. In the

home, school, the church, the public place—in truth,
everywhere—it exists.   These observations are not
set down in any spirit of unkindness or hostility to
the colored race, or with a view to create or encourage
discrimination or repression that will place obstacles
in the way of their improvement or advancement, but
rather to note an irremovable and remediless condi-
tion that must be acknowledged and that will stead-
fastly be adhered to.

This question of the right of carriers to classify and
separate white and colored passengers has been the
subject of consideration by a number of courts, as
well as the Supreme Court of the United States, and
there is practically unanimity of opinion in the de-
cisions relative thereto; the leading case on the ques-
tion perhaps being that of Westchester & Philadelphia
R. Co. v. Miles, 55 Pa. 209, 93 Am. Dec. 744,. in which
it is stated: "The right of the carrier to separate his
passengers is founded upon two grounds—his right
of private property in the means of conveyance, and
the public interest.   The private means he uses be-
longs wholly to himself, and imply the right of control
for the protection of his own interest, as well as the
performance of his public duty.   He may use his
property therefore in a reasonable manner.   It is not
an unreasonable regulation to seat passengers so as
to preserve order and decorum and to prevent con-
tacts and collision arising from natural or well-known
customary repugnances, which are likely to breed dis-
turbances by promiscuous sitting.   It is much easier
to prevent difficulty among passengers by regulation
for their proper separation than it is to quell them.
The danger to the peace engendered by a feeling of
aversion between individuals of the different races
cannot be denied.   It is the fact with which the com-

pany must deal. If a negro takes a seat beside a white man, or his wife or daughter, the law cannot repress the anger or conquer the aversion which some will feel. However unwise it may be to indulge the feeling, human infirmity is not always proof against it. It is much wiser to avert the consequences than to punish afterwards the breach of the peace it may have caused." And the court held that the rights of the carrier to adopt and enforce reasonable rules providing for the separate carriage of white and colored passengers was entirely within its powers. And this case was approved by the Illinois supreme court in Chicago & Northwestern Ry. Co. v. Williams, 55 Ill. 185, 8 Am. Rep. 641.

In Hall v. DeCuir, 95 U. S. 505, 24 L. Ed. 547; the Supreme Court of the United States—a case involving the right of the carrier to classify and separate white and colored passengers—in substance held that the carrier, so long as the conveniences and accommodations furnished were substantially equal, had the right to adopt reasonable rules and regulations for the separation and classification of white and colored passengers. In Plessy v. Ferguson, 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256, the supreme court, in upholding the validity of a statute similar to the one in force in this State compelling railroad companies to provide separate coaches or compartments for colored people, recognized the right of carriers to establish reasonable rules and regulations for the separation and classification of the races, although in that case the question of the rights of an interstate passenger was not involved. To the same effect is the opinion of that court in Chesapeake & Ohio Railway Company v. Commonwealth of Kentucky, 179 U. S. 388, 21 Sup. Ct. 101, 45 L. Ed. 244.

In The Sue, decided by the federal court, and reported in (D. C.) 22 Fed. 843, where the question involved was the right of a carrier to separate white and colored passengers, Judge Morris said: "The great weight of authority, it seems to me, supports the doctrine that to some extent at least, and under some circumstances, such a separation is allowable at common law, and I think it is not going too far to say that such is the decided leaning of the Supreme Court of the United States as expressed in the opinion pronounced in Hall v. De Cuir. The supreme court appears to treat the question as one with regard to which reasonable usage which now exists can only be controlled by legislation, and holds that, if public policy requires such legislation, it must come from congress. It has been argued that the constitutional amendments, which assure to colored people all political rights of citizens of the United States and of the States, and were intended to having obliterated color as a distinction with regard to political rights, of necessity make such color discrimination unlawful in carriers as against the declared public policy of the nation. In view of the authoritative interpretation of those amendments, I cannot so hold. It is a question with which citizenship had but little to do. If it was found that naturalized citizens of English or Irish birth or the French and German nationality interfered with each other's comfort, or with the discipline of the boat when occupying the same sleeping cabins, the court might well find a regulation which enforced a separation between them was reasonable, and therefore lawful. But to say that regulations based on conditions of race or color may be lawful is not to say that every such regulation can be upheld. The regulation must not only be reasonable, in that it conduces

to the general comfort of the passengers, but it must not deny equal conveniences and opportunities to all who pay the same fare."

In Houck v. Southern Pacific Ry. Co. (C. C.), 38 Fed. 226, the court said: "The defendant contends that the evidence show that the front car which was set apart by the company for colored people was as safe· and was substantially equal in its conditions to the rear car, and to which he was denied· entrance. These recitals make up the issue of law and fact. In accordance with the contention of these counsel, the court charged the jury that a common carrier, a rail-way company, may or might be under a proper show-ing of facts justified and authorized in law in the management of its complicated interests in setting apart one or more coaches for the use exclusively of white people, and to set apart other cars for the use exclusively of colored people; but, when the manage-ment undertakes to carry out such a rule, it is charged with the duty of giving or furnishing to the colored passengers who pay first-class fare over the line a car to ride in as safe and substantially as inviting to travel in as it furnishes to white passengers. The defense having shown some facts in relation to the population along the railway, and as to the kind and character of persons who often become passengers on their. trains, which were thought by the court to be sufficient to authorize the management to require by its rules that the rear car or one of the cars in the train should be occupied exclusively by white people, the jury were directed to consider for the purposes of this case that the defendant company was justified in law in the enforcement of such a rule. And the plain-tiff cannot complain of an injury coming to her be- ·cause she was denied· entrance to the rear car,

provided it was shown satisfactorily to them that the car into which Mrs. Hough was told to go by the conductor was as safe and substantially as comfortable in its conditions as the car to which she was denied admission."

In Murphy v. Western Atlantic R. Co. (C. C.), 23 Fed. 637, Judge May said: "I believe that, where the races are numerous, a railroad may set apart certain cars to be occupied by white people, and certain other cars to be occupied by colored people, so as to avoid complaint and friction; but, if the railroads charge the same fare to each race, it must furnish substantially alike and equal accommodations. A railroad company may make all needful rules and regulations in the conduct of its affairs, but such rules must be reasonable and impartial—fair to all. If it separates passengers upon the color line, it must treat each alike from the intrusion of the other. If it give to white people one end of the car, and colored people the other end, and exclude colored people from the white end, it must also exclude white people from the colored end. A passenger has no right to select the car upon which he will travel without direction or interference on the part of the carrier. When he proposes to take a train, the trainmen may designate the car which he may enter, and he has no right to complain if such car is as comfortable and convenient in its equipment as the other of like character."

It will thus be seen that the principal matter to be considered in cases of this character is not the color of the passenger, but whether or not he has been furnished accommodations substantially equal in quality, convenience, and comfort to those holding similar tickets. This issue was fairly submitted to the jury by the instructions of the court, and their finding

was, in effect, that no discrimination was made against appellant in respect to the accommodations furnished him.

The judgment of the lower court must be affirmed. Petition for rehearing by appellant overruled.