MRS. MATTIE SHELTON *et al* v. CHICAGO, R. I. & P.
R. Co.

(*Nashville.* December Term, 1917.)

1. **RAILROADS.** Separate accommodations for races. Statutes.
Construction.

The statute of Arkansas (Kirby's Dig., sections 6622-6625), re-
quiring separate accommodations in certain cars for the use
of white and African passengers, does not require a .dining car
to be partitioned with wood, nor that two separate dining cars
be provided. (*Post, p.* 384.)

Acts cited and construed: Acts 1891, ch. 52.

Code cited and construed: Sec. 3074 (T.-S.).

2. **STATUTES.** Construction.

A statute, when possible, should be given a construction making it
sensible, without manifest inconvenience, so serious as to work
injustice. (*Post, pp.* 384, 385.)

Cases cited and approved: Maxey v. Powers, 117 Tenn., 381; Hall
v. State, 124 Tenn., 235.

3. **RAILROADS.** Separate accommodations for races. Statutes. Con-
struction.

Under the Arkansas Statutes (Kirby's Dig., sections 6622-6625),
as to separate accommodations for white and African passengers,
it is sufficient if a railroad operating dining cars serves white
persons at one time and the negroes at another without provid-
ing separate coaches. (*Post, pp.* 385, 386.)

Cases cited and approved: Chiles v. Chesapeake, etc., R. Co., 125
Ky., 299; Chesapeake, etc., R. Co. v. Wells, 85 Tenn., 613.

4. **RAILROADS.** Separate accommodations for races. Statutes.
Construction. Liability.

A railroad which maintained a dining car, intending to serve
white and negro passengers at different hours, was liable to a

white passenger, when it permitted negroes to be served while she was in the car, only for its negligence in making a call to the dining car for white persons at the time when negroes were about to be served.   (*Post, pp. 386, 387.*)

5. **RAILROADS.** Excessive damages.

Where a railroad permitted negroes to be served while white passengers were in the dining car, on perceiving which plaintiff arose and left the car and the steward insisted in the hearing of others that she pay for the meal ordered, a verdict of $750 was excessive and should be reduced to $250.   (*Post, p. 387.*)

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County.—A. G. Rutherford, Judge.

W. H. Washington and J. C. Voorhees, for appellants.

Wright, Miles, Warring & Walker and W. H. Borsje, for appellee.

Mr. Justice Williams delivered the opinion of the Court.

Mrs. Shelton brought this suit to recover damages, alleging that, while she was a passenger on defendant's railway between Memphis, Tenn., and Little Rock, Ark., the defendant failed to provide separate dining cars or a partitioned dining car as required, it was claimed, by an Arkansas statute, which provides

for the separate accommodation of the white and ne-
gro races. It was further alleged that the plaintiff
as passenger was brought into involuntary association
with members of the colored race by reason of the neg-
ligence of the railway company.

It appears that plaintiff, her husband and two sis-
ters were passengers from Memphis to Little Rock,
and that a waiter from the dining car passed through
the sleeper occupied by plaintiff's party announcing
a call to luncheon. Mr. Shelton was indisposed and
did not desire food, but the three ladies immediately
proceeded to the diner in response to the call. It ap-
pears that this was probably the third and last call,
and when the ladies entered the dining car only a few
white passengers remained at table, and these must
have finished their meals at once. Mrs. Shelton, after
writing out and handing in the meal order, glanced
up and noticed two flashily dressed negro women enter
the diner. They were shown seats, and were about
to be served at the table in front of and next to the
one occupied by plaintiff and her sisters. The white
ladies entered into a discussion as to what they should
do. About this time negro porters seated themselves
and began to eat at the table next to that of the party
in their rear, whereupon the ladies started from the
car. The two sisters were in front and passed out of
the dining car door, but Mrs. Shelton was stopped by
the steward, who barred the way by holding the door
of exit. He remarked to plaintiff:

"Those ladies (referring to the colored women) were in here when you came in." Mrs. Shelton, pushing his hand from the door knob got past the steward who, however, followed her into an intervening sleeping car next to the diner, and in a manner described as insulting demanded that the food ordered be paid for, in the presence and hearing of other passengers in that Pullman. Plaintiff passed on to the sleeper where her husband and sisters were. The steward still followed her, and offered to serve the order there, but repeated his statement: "Those colored ladies were in there when you came in; but I could not help that." This was resented by Mr. Shelton who had seen the colored women pass through his sleeper going towards the dining car some minutes after the women of his party had gone to luncheon. After some heated words were passed the steward withdrew.

Plaintiff was awarded judgment upon a verdict for $750, which has been sustained by the court of civil appeals. The railway company has appealed, and insists that there is no liability; that if there be liability, nominal damages only should be allowed, and that in any event the verdict was excessive.

The Arkansas statute relied on appears as sections 6622 et seq. of Kirby's Digest, as follows:

"Sec. 6622. All railway companies carrying passengers in this State shall provide equal but separate and sufficient accommodations for the white and African races by providing two or more passenger coaches for each passenger train; provided, each railway com-

pany carrying passengers in this State may carry one partitioned car, one end of which may be used by white passengers and the other end by passengers of the African race, said partition to be made of wood, and they shall also provide separate waiting rooms of equal and sufficient accommodation for the two races, at all their passenger depots in this State.

"Sec. 6623. The foregoing section shall not apply to street railroads. In the event of the disabling of a passenger coach, or coaches, by accident or otherwise, said company shall be relieved from the operation of this act until its [his] train reaches a point at which it has additional coaches.

"Sec. 6624. No person or persons shall be permitted to occupy seats in coaches, or waiting rooms, other than the ones assigned to them, on account of the race to which they belong; provided, officers in charge of prisoners of different races may be assigned with their prisoners to coaches where they will least interfere with the comfort of other passengers; provided further, that section 6622 shall not apply to employees of a train, in the discharge of their duties, nor shall it be construed to apply to such freight trains as carry passengers.

"Sec. 6625. Carriers may haul sleeping or chair cars for the exclusive use of either the white or African race, separately, but not jointly."

We have in this State a separate coach statute which is quite similar to the one above quoted. Act 1891, chapter 52; Thompson's Shannon's Code, section 3074

et seq., but it does not appear that, either in Arkansas or in this State, the statute has been construed in respect of its application to a dining car carried as a part of a train for the accommodation of passengers. We have not been cited, and we have not found, any reported case in other jurisdictions which treats of that phase of separate coach laws.

Evidently the Arkansas statute, like our own, was passed before dining cars were brought into use. The statute to be construed does specifically mention in section 6625 sleeping cars and chair cars, which were at the time in general use; and it is observed that no partition into separate sections of those particular cars is stipulated; but to the contrary such, it is provided, may be hauled for the exclusive use (in its entirety) of either race, separately but not jointly. Statutes of later date passed in other States do deal with the modern dining car. Thus, in the Oklahoma statute, passed December 18, 1907, dining cars are mentioned in connection with sleeping cars and chair cars, "to be used exclusively by either white or negro passengers, separately but not jointly." Laws 1907-08, Okl., chapter 15, section 7.

We are of opinion that the Arkansas statute did not undertake to prescribe that dining cars should be divided into two compartments or sections by wooden partitions. Section 6622 refers to a passenger day coach, in which, but for the separation made incumbent on common carriers, the two races would be thrown together during a journey. That separation might be

by way of providing two passenger coaches, one for each race, or "one partitioned car." Sleeping cars, as said, are dealt with in a distinct manner; dining cars not at all.

We, therefore, are of opinion that the lower courts were incorrect in holding that the defendant company's dining car was governed by the statute and required to be partitioned, the partition to be of wood, or two separate dining cars provided.

The construction of the statute contended for by plaintiff might be so onerous on railway companies as to lead to consequences not desirable for either race, the abandonment of dining cars in certain trains, and on those railroads which would not be justified in going to the expense of maintaining separate diners, and find it impracticable to partition one of them. In this case a full-length dining car was not operated—only one-half of a car was found necessary for and devoted to buffet service—and it would be quite out of the bounds of reason to subdivide this space into two compartments, as a practical proposition.

A statute, when possible, should not be given a construction that would make it not sensible, or that would lead to manifest inconvenience, so serious as to work injustice. *Maxey* v. *Powers,* 117 Tenn., 381, 101 S. W., 181; *Hall* v. *State,* 124 Tenn., 235, 137 S. W., 500.

When, therefore, dining cars were introduced they were the subjects of regulation by the railway companies as to the use to be made of them by passen-

gers of the white and negro races, under common-law power to that end.

It appears, however, that the defendant railway company had established a rule for the purpose of providing equal, but separate and sufficient accommodation in its dining cars for the two races. The partition it made of the car for use was by hours during which members of the respective races might resort to the dining car for food. It seems to us that this rule was not only reasonable, but that it was a wise and fair one, and perhaps the best that in the circumstances could be adopted to serve the same ends the legislatures had in mind when they enacted laws in relation to separation of the races in passenger coaches. The rule of the railway company in operation was that white passengers were served first; three separate meal calls were made in the day coaches and sleepers for the white passengers. If there were any negro passengers desiring the meal, they were not served until the lapse of a reasonable time following the making of the last call when there was no probability of other white passengers coming into the car for service. In our opinion we should not read into the statute anything that would prevent such a just regulation by the carrier, unless compelled to do so. The rule admits of railway trains maintaining schedules that are not slowed down by stops for roadside meals, and it does not lead to denial of meals to members of either race, or to unreasonable inconveniences.

A State legislature may very wisely deem regulation of dining cars by rules of the carrier, rather than by statute, advisable.

The right of a carrier, at common law, to make reasonable rules for the separation of passengers belonging to different races, observing the condition of equality of accommodations, has often been sustained by the State courts. *Chiles* v. *Chesapeake, etc., R. Co.,* 125 Ky., 299, 101 S. W., 386, 11 L. R. A. (N. S.), 268, and cases collected in note; and see *Chesapeake, etc., R. Co.* v. *Wells,* 85 Tenn., 613, 4 S. W., 5.

And in the Chiles Case, on writ of error, the supreme court of the United States held that this was true even as to interstate passengers, where there is congressional inaction in that regard. 218 U. S., 71, 30 Sup. Ct., 667, 54 L. Ed., 936, 20 Ann. Cas., 980 and note.

We hold that a recovery by the plaintiff in the pending case must be upheld on the ground that the evidence shows liability on the part of the railway company, under the above rule, in that there was negligence in the making of the call for white passengers to go into the dining car for luncheon at a time when negro passengers and train employees were about to be or were being served. Plaintiff's proof is that she went to dining car immediately after a call to luncheon had been cried in her car. The dining car steward was negligent in not stopping her and explaining the error if the call had in fact been made by mistake, in permitting the situation to grow more involved in the circumstances shown and in his later treatment of Mrs.

Shelton when he barred her passage and followed her into the sleeping car, as set out above.

But the court is of opinion that the verdict was excessive, and that $250 is a proper allowance under the conditions appearing. A remittitur of $500 is suggested; and in event it is accepted, an affirmance of the judgment below is ordered. On refusal, a reversal and remand for a new trial results. Costs of the appeal will abide the event.