## Louisville & Nashville Railroad Company v. Commonwealth.

### (TWO CASES.)

### (Decided October 5, 1916.)

### Appeals from Kenton Circuit Court.

1. Railroads—Operation—Separate Coach Law.—A passenger train operated between two stations in this state and a station without the state is operated within the state, and subject to the provisions of section 795 of the Kentucky Statutes, known as the Separate Coach Law.

2. Railroads—Separate Coach Law.—It is a violation of this law to operate a passenger train within the state that is not equipped with separate coaches for white and colored passengers without regard to whether or not passengers of one of the races desire passage upon a particular train or trip.

8. Railroads—Offenses in Operation—Separate Coach Law.—The failure to comply with the statute in the equipment of each passenger train so operated is a separate and continuous offense, but each trip of a particular train is not a separate offense.

4. Railroads—Indictment—Failure to Comply With Statutes.—A conviction for a failure to comply with the statute with reference to a particular train is a bar to a subsequent conviction for a failure, prior to the finding of the indictment under which the conviction is had, to furnish the required equipment for the same train.

B. D. WARFIELD and S. D. ROUSE for appellant.

M. M. LOGAN, Attorney General; O. S. HOGAN, Assistant Attorney General, and STEPHENS L. BLAKELY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming in Part, Reversing in Part.

The grand jury of Kenton county at its February, 1916, term returned two indictments against the appellant, charging it with operating a passenger train in Kenton county between its Covington and Latonia stations without providing separate coaches for white and colored passengers as provided by section 795 of the Kentucky Statutes. One of these indictments, No. 3134, charged the commission of the offense on the ............ day of April, 1915, and the other indictment, No. 3142, charged the commission of the offense therein on the ............ day of May, 1915.

Upon the trial of the first case the Commonwealth introduced the testimony of C. W. Schultz, conductor on the train, who testified that in April, 1915, the appellant operated a passenger train known as the "Transfer," between Union Central depot in Cincinnati and Covington and Latonia stations in Kentucky; that the train consisted of an engine and one coach, and that the coach was not divided into compartments; that both interstate and intrastate passengers were carried on this train; that the train made several trips each way daily; that after its last regular run the engine was sent to the roundhouse and the coach placed on a sidetrack for the night.

Appellant introduced no witnesses and the court instructed the jury to find it guilty, and to impose a fine of not less than $500.00, nor more than $1,500.00. The jury fixed the fine at $500.00.

Upon the trial of the second indictment the case was submitted upon an agreed statement of facts, in effect the same as the testimony given by the conductor on the former trial except that the time of the commission of the acts was fixed upon May 1, 1915. The court again instructed the jury to find appellant guilty, and this jury fixed the penalty at $625.00.

Separate appeals from these two judgments were prosecuted, but by agreement are heard together. Three reasons for reversal are urged by appellant: (1) That the separate coach law does not apply to the train in question; (2) that the evidence does not show that any negroes applied for passage upon the occasions named in the indictments, and that there is no violation of the

law unless the company fails to provide separate coaches as needed; (3) that the offense is a continuing one and that one conviction is a bar to another conviction for all violations occurring before the date of the indictment upon which the first conviction was had.

1.  It is argued that because the train in question is simply a transfer train, operated by appellant to accommodate its passengers going to and from Cincinnati, with a choice of two passenger stations in said city; that the business it does is largely interstate, and that the business performed within the state is trivial and incidental as compared with the principal business; that this train therefore is not subject to the provisions of section 795 of the statutes.

The indictments charged and the proof shows that the train in question is operated by appellant within the state between the Covington and Latonia stations upon appellant's line of railroad in the state.  Appellant's argument is based upon the assumption that this train is not operated within the state, and is therefore not subject to the provisions of section 795 of the Kentucky Statutes, under which this charge is prosecuted. This assumption is erroneous because the proven operation between the two Kentucky stations brings this train within the provisions of that statute.  Appellant's whole argument upon this question is therefore based upon a false premise and is of no force.  Even if it is conceded, as stated by appellant, that the principal business of this particular train is interstate and it is not operated in intrastate commerce "except incidentally, casually and obliquely," the fact nevertheless remains that the train is operated within the state.  It also results that as this record presents no questions of interstate commerce, the constitutionality of the act under which the charge is drawn cannot be questioned here.  Ohio Valley Ry. Co.'s Receiver v. Lander, 104 Ky. 431; C. & O. R. Co. v. Commonwealth, 21 K. L. R. 228; C. & O. R. Co. v. Kentucky, 179 U. S. 388; Louisville, etc., Ry. Co. v. Mississippi, 133 U. S. 587; Plessy v. Ferguson, 163 U. S. 537.

2.   Appellant contends that, in order tɔ sustain an indictment for failure to provide separate coaches for the travel of white and colored passengers, it is necessary for the Commonwealth to prove upon the occasions in question that passengers of both races desired transportation; that there can be no violation of the statute

unless there was in fact a passenger of the particular race for whom a separate compartment was not provided; that while the proof here shows there was but one coach or compartment, appellant's motion for a peremptory instruction should have been sustained because there was a failure in the proof to show that passengers of the other race desired transportation upon that occasion. This raises a question not heretofore passed upon in this state.

Counsel for appellant do not cite any authority in support of their contention, and in the only case cited by appellee (C. & O. R. Co. v. Commonwealth, 119 Ky. 519), while the opinion states there were no colored passengers on the train at the time the defendant failed to furnish a separate compartment for that race, that fact was not presented as a defense and is not considered in the opinion. The only case that we have been able to find which treats of this particular question is Southern Kansas Ry. Co., of Texas, v. State, 44 Tex. Civ. Ap. 218, 99 S. W. 166. In that case the court under a Texas statute which, in substantially the same terms as our statute, required common carriers to provide separate coaches for the white and colored races, disallowed the defense that appellant is urging here. The applicable part of our statute requires common carriers "to furnish separate coaches or cars for the travel or transportation of the white and colored passengers on their respective lines of railroad." The Texas statute provides that common carriers "shall provide separate coaches for the accommodation of white and negro passengers." While the language of the two statutes is not identical, the evident purpose of both is the same. Unquestionably the legislatures of the two states in the enactment of these statutes intended to accomplish the same things in the same way, and no difference in construction could be sustained upon any difference in the language employed in one from the other. Therefore, unless the reason advanced in support of the construction of the Texas statute are unsound or inadequate, the same conclusions ought to be reached in the construction of our statute. We quote the following from the opinion in the Texas case:

"We think the plain requirement of the statute is that railroad companies doing business in this state as common carriers of passengers for hire must provide

separate coaches, whether the particular train is actually carrying at the time both white and negro passengers or not. If the train is one 'carrying passengers,' the company should be deemed to know that negro passengers may at any time demand carriage thereon, and is required to anticipate such a contingency by making preparations therefor. While the object of the legislature was undoubtedly, to provide for the segregation of the races upon passenger trains in this state, yet it clearly sought to reach this end by requiring railroad companies to equip their trains carrying passengers with separate coaches, and it is for a failure in this respect that the penalty is imposed. Furthermore, each vehicle or compartment of a coach, as provided in section 3, must bear in some conspicuous place appropriate words in plain letters indicating the race for which it is set apart."

From which it will be seen that the legislative intent in the enactment of the law is interpreted to be (1) the segregation of the races upon passenger trains, and, (2) to accomplish this end by requiring railroad companies to equip their passenger trains with separate coaches. If it was the legislative will, as it undoubtedly was, that the desired purpose should be attained by requiring the railroad companies to equip their trains in the manner prescribed, it will not do to say, as is argued by counsel for appellant, that the companies may take the chance of there being upon a particular train or a particular trip no passengers of one of the races. We do not think that the legislature intended that railroad companies might speculate, subject only to a fine in the event that they guessed wrongly upon this matter, but are of the opinion that it was clearly the intention that all railroad trains should be equipped with separate accommodations for the two races, and that there is a violation of the provisions of the statute whenever a railroad company fails to so equip any of its passenger trains, without regard to whether or not passengers of both races desire passage upon a particular trip or train.

(3) Our conclusion upon the second proposition above in a large measure determines our decision of the third proposition. As stated above, the statute is violated when a railroad company fails to equip any of its trains with separate coaches for the two races. We now come to consider whether or not a conviction for

failure to provide the required equipment upon a particular train in the month of April is a bar for a failure to provide such equipment for the same train in May.

Appellee attempts to show that this was a different train each day by proof of the fact that the train was broken up each night and reassembled the next morning. This, however, does not result, as it was the same train every day, operated in exactly the same service and upon the same schedule, with the same equipment and the same crew of operators. As we have above construed the law, appellant's offense consisted in the failure to equip this transfer train with separate coaches, and the offense was continuous, provable by a single act, and the failure upon separate days to comply with the law supplies but cumulative evidence of the one violation. The statute does not provide a penalty for each day's violation, the penalty being for each offense.

Counsel for appellee rely upon the case of L. & N. R. Co. v. Commonwealth, 154 Ky. 293, as sustaining their contention that each day the train was operated without separate compartments, was a separate violation of the law. We do not so regard the opinion in that case, but upon the other hand consider it strong support for our conclusion here. In that case the railroad company was indicted for its failure to block the frogs on its tracks as provided by section 780 of the statutes, and the court held that the failure to block each frog constituted a separate offense, just as here, we hold the failure to equip each train as required is a separate offense. The court there was not asked to, and did not, decide that a separate offense was committed each day for each frog not blocked, and we find nothing in that opinion to authorize here a finding that a separate offense was committed each day a certain train was not equipped with separate coaches.

Counsel for appellee have cited many other authorities too numerous for us to refer to them all, none of which, in our judgment, is contrary to our conclusion here. In the case of State v. Ind. & I. S. R. R. Co., 32 N. E. 817, cumulative penalties were permitted for each violation of the provisions of an act which required railroad companies to provide a blackboard at each telegraph station, and to post a report thereon of whether or not each train would arrive on schedule time, and if late, how much. Cumulative penalties were allowed for

each failure to post notice when each train would arrive upon the ground that the statute clearly made each failure to post such notice a separate offense. That statute provides a penalty "for each violation of the act in failing to report or in making a false report," and in clearly defining what constitutes a separate offense, is different from our statute.

In the case of People v. Spencer, 94 N. E. 614, and also reported in 22 Am. & Eng. Anno. Cas. 818, one conviction was held not to be a bar to a subsequent conviction under a statute prohibiting the manufacture and sale of adulterated vinegar and the misbranding of any package containing such vinegar, and providing further a penalty for each violation. Cumulative penalties were there allowed because clearly authorized by the statute. In the course of the opinion the court said:

"We must look to the language of the statute to see whether, and when cumulative penalties are permitted in actions of this character. In reported decisions, this court has refused to recognize a right to recover them, unless clearly authorized. The theory of such prosecutions has been considered to be to administer a warning not to continue the acts complained of. Generally, the purpose of the legislature will be sufficiently subserved, when one violation, or one default, is recovered for, which shall act as a deterrent upon continuing to disregard the statute."

This is a clear statement of the principle generally recognized under which cumulative penalties are permitted. The statute before us not only does not clearly provide a penalty for each day the statute is violated, but upon the other hand provides only a penalty for each offense. As we have before stated, the offense under the statute before us is committed by failure to equip with separate coaches each train, and not for each time a particular train is operated. The following cases, we believe, support our conclusion. Commonwealth v. Standard Oil Co., 120 Ky. 724; Wilson v. Commonwealth, 119 Ky. 769; Commonwealth v. Crowell, 60 S. W. 179; In Re Snow, 120 U. S. 274; U. S. v. Boston & Me. R. R. Co., 168 Fed. 148; U. S. v. St. L. & S. F. R. Co., 107 Fed. 870; U. S. v. Boston & Albany R. Co., 15 Fed. 209; U. S. v. Patty, 2 Fed. 664.

It therefore results that the conviction under indictment No. 3134 was a bar to the prosecution under in-

dictment No. 3142, and any other prosecution for the failure to equip this transfer train as required by the separate coach law prior to the finding of the indictment first tried.

Wherefore the judgment in the first case is affirmed, and the judgment in the second case is reversed with directions to dismiss the indictment.