## South Covington & Cincinnati Street Railway Company v. Commonwealth.

## Cincinnati, Covington & Erlanger Railway Company v. Commonwealth.

(Decided September 27, 1918.)

### Appeals from Kenton Circuit Court.

1. Statutes—Constitutional Law.—Section 795 Kentucky Statutes, is not in violation of article 1, section 8, of Federal Constitution.
2. Railroads—Street- and Interurban Railroads.—Section 795, Kentucky Statutes, does not apply to street railroads, but does apply to an interurban railroad, regardless of its motive power, or character of equipment.
3. Street Railroads—Street Railroads. Defined.—Street railroads are such railroads as operate within the limits of a city or town, and carry passengers from one point upon a street to another, and whose franchises for the use of the streets are granted by the municipality, after advertisement, and at a public sale.

4. Railroads—Interurban Railroads.—Interurban railroad companies acquire their rights and powers from the state.

5. Railroads—Interurban Railroads—Operation.—An interurban railroad company can not escape the requirements of section 795, Kentucky Statutes, by operating or causing its road to be operated, in the manner of a street railroad.

6. Railroads—Interurban Railroads—Operation by Lessee.—The lessee of an interurban railroad can not evade the requirements of section 795, Kentucky Statutes, by undertaking to operate it, as a street railroad is operated in a city.

ERNST, CASSATT & COTTLE and J. C. W. BECKHAM for appellants.

STEPHENS L. BLAKELY for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming in each case.

These appeals from the Kenton circuit court, are by agreement heard and determined together. The actions were heard and decided together, below, and without the intervention of a jury. The Cincinnati, Covington & Erlanger Railway Co., is a corporation organized under the general laws for the incorporation of railroad companies in this state, and by the terms of its charter, it is authorized to construct, maintain and operate a railway "not exceeding ten miles in length, with a single or double track and with all the usual convenient appendages and appurtenances thereunto belonging." The articles of incorporation provide, that the railway to be constructed and operated is from the city of Covington to the town of Erlanger, and to such further point beyond the town of Erlanger as may hereafter be determined upon, and over and along and upon such bridges, streets, highways, roads, and such private property, as the company may, by due process of law, acquire the right to lay its tracks upon. The motive power to be used in the operation of its road, was to be electricity or other improved methods of rapid transit. The corporation was duly organized by the election of officers and directors, and its organization has been kept up by a full complement of officers and directors, until the present time. The corporation was created and organized in the year, 1899, and shortly thereafter, the construction of the road began at Montague street, about six hundred feet within the corporate line of the city of Covington and had been, before the finding of the in-

dictment against it, continued to a point on the Lexington & Covington turnpike, near the intersection of the Butter Milk pike, in the direction of Erlanger, and for a distance of nearly five miles from its beginning point. On the way, it passes the town of Fort Mitchell, which contains a population of from two hundred and fifty to four hundred persons. The line of its road extends, at places over private property, and to condemn which for its use, it invoked the power of eminent domain.

The South Covington and Cincinnati Street Railway Company, was created by and organized under a charter granted it by the General Assembly of the State of Kentucky, on the 25th day of January, 1876, and this charter was amended by acts of the General Assembly, enacted on March 13, 1878, and April 5, 1878. By its charter as amended, it was given authority "to construct, operate and manage street railways in the city of Covington and vicinity," "and along such streets and public highways in the city as the council shall grant the right of way to;" "and along such roads or streets out of the city as the companies or corporations owning the same may cede the right to the use of;" "and it may at any time, by agreement, purchase, lease, consolidate with, acquire, hold or operate any other street railway, or intersect therein, in Covington, Cincinnati, Newport or vicinity," etc. It, in some way, became the owner of all the stocks of the Cincinnati, Covington and Erlanger Railway Company, except the shares of stock, which were owned by the directors of the latter company, and which were necessary under the law to be held by the directors, in order to make them eligible for the positions of directors. The officers and directors of each of the corporations have been substantially the same from the creation of the Cincinnati, Covington & Erlanger Railway Company until the present time. The two corporations have held offices, at all times, in the same building, and they have operated, under the same general management. The officers, and directors of each corporation, oftentimes composed for the most part of the same persons, have at all times, been well acquainted with the business affairs and purposes of each corporation. The intimacy between the corporations has been such, that it has not been considered necessary to reduce to writing any contracts, agreements, or understandings between the two, as to the use of the road of the

junior corporation and the rights under its charter, by the elder corporation. The above facts are shown by the evidence, and the further fact, that the elder corporation operating in the name of the junior, actually constructed its road, and has been operating it from the beginning, being the owner of the cars, which are operated upon the road. The motive power is electricity and is the property of the elder corporation. The cars operated upon the road are such as are ordinarily used upon street railroads, and such as the elder corporation uses upon the street railroads of its system. A fare of five cents is charged for passage from any point upon the road of the Cincinnati, Covington and Erlanger Company, to any point on the system of the South Covington & Cincinnati Street Railway Company and from one point to another upon the entire system of the latter company, and transfers are given for all connecting lines. Many persons, who take passage upon the line of the Cincinnati, Covington & Erlanger Railway Company, at its terminus, near Erlanger and at other places along its line, are transported without change of cars, into Cincinnati, in the state of Ohio, as it connects with the lines of the South Covington & Cincinnati Street Railway Company, at its terminus, in the city of Covington. Separate coaches, nor separate compartments in the same coach, are not provided for the white and colored passengers upon the road of the Cincinnati, Covington & Erlanger Railway Company. The coaches used will seat about thirty-two persons and the persons of both races occupy them, together.

Each of the appellant companies was indicted for a violation of section 795, Ky. Stats., commonly known as the "Separate Coach Law." The South Covington & Cincinnati Street Railway Company was charged with the offense of operating railroad coaches or cars, upon the railroad of the Cincinnati, Covington & Erlanger Railway Company, and failing to furnish separate coaches for the transportation of white and colored passengers, or coaches with separate compartments for the white and colored passengers, and without the coaches or compartments bearing in a conspicuous place words indicating the race for which it was set apart. The indictment charged that it operated the cars upon the road as the lessee of the Cincinnati, Covington & Erlanger Railway Company. The latter company was charged

with having given authority to the former company to operate the cars upon its road, in the unlawful manner above described, and with having leased the road with the knowledge that the lessee was to so operate the road. Upon a trial of the two prosecutions, together, before the court, a jury having been waived, each of the appellants was found guilty, and its punishment fixed at a fine of $500.00. The motion of each for a new trial was overruled, and they have appealed.

The grounds for a new trial, which were, also, embraced in a motion before judgment to dismiss the indictment, in the nature of a motion for a directed verdict, are as follows:

(1) The statute, under which the indictments were made and drawn, is an unlawful and unreasonable interference with and regulation of interstate commerce and is in violation of article 1, section 8, of the Federal Constitution.

(2) The statute, under which the indictments were made, if held applicable to the case made by the indictments and the evidence, is an unlawful and unreasonable interference with and regulation of interstate commerce and is in violation of article 1, section 8, of the Federal Constitution.

(3) The defendants were not, at the time, covered by the indictments, running or otherwise operating a railroad within the meaning of the statute.

(4) The evidence was insufficient to support the findings.

(a) The contention that section 795, Ky. Stats., under which the indictments and convictions were had, is in violation of any provision of the Federal Constitution has been determined to the contrary, both, by this court and the Supreme Court of the United States. Ohio Valley Ry. Co. v. Lander, 104 Ky. 431; Quinn v. L. & N. R. R. Co., 17 R. 811; L. & N. R. R. Co. v. Commonwealth, 18 R. 491; L. & N. R. R. Co. v. Commonwealth, 19 R. 617; Plessey v. Ferguson, 163 U. S. 537; C. & O. Ry. Co. v. Commonwealth, 21 R. 228; C. & O. Ry. Co. v. Kentucky, 179 U. S. 388; Louisville, etc. Ry. Co. v. Mississippi, 133 U. S. 587; L. & N. R. R. Co. v. Commonwealth, 171 Ky. 355.

(b) Neither is the statute, supra, when applied to the indictments and evidence, in these cases, an unreasonable interference with, or regulation of interstate

commerce, nor violative of the commerce clause of the Federal Constitution. Each of the termini as well as all the stations of the Cincinnati, Covington & Erlanger Railway Company's road is within the state of Kentucky. The operation of a train upon this road, while it may be extended into another state, by connecting it with, and operating it upon the track of another company, the fact yet remains, that it is operated, the entire length of the line of the Cincinnati, Covington & Erlanger Railway Company, in the state of Kentucky. The offense charged and for which the defendants were convicted was the operation of the railroad, in an unlawful manner, within the state, and in violation of one of the measures enacted under the police powers of the state. L. & N. R. R. Co. v. Commonwealth, 171 Ky. 355, *supra*. The holding of this court, in Chiles v. C. & O. R. R. Co., 125 Ky. 304, with regard to the application of the statute, under consideration, to the transportation of an interstate passenger is adhered to, and not overlooked.

(c) Touching the contention, that the appellants were not shown to have operated a railroad, within the meaning of the statute, it will be observed, that no exception is made in the statute of any kind of a railroad. The appellants insist, that the railroad, which was being operated, was a street railroad, and for that reason the statute has no application to it. This court has distinguished between a railroad, as used in the statute, and a street railroad, and has held that a street railroad company, in the operation of a street railroad or railway, is not required to furnish separate coaches or separate compartments, in its coaches, for the travel of white and colored persons. Louisville Ry. Co. v. Commonwealth, 130 Ky. 738. The statute is very broad in its terms and applies to all persons and companies, who may operate railroads, in this state, either in their own names or that of others, or whether they are the owners of the roads or lessees. This court, in the same opinion in which it held that the statute was not applicable to street railroads, held that it did apply to interurban railroads. Louisville Ry. Co. v. Commonwealth, *supra*. The agency by which a railroad is operated, whether steam or electricity, or the kind of cars and rolling stock, which is used in its operation, does not determine its character, as a street, interurban or trunk line rail-

road. In Diebold v. Ky. Traction Co., 117 Ky. 146, it is said: "It seems to us that it is the charter of a company which places it in the class to which it belongs, whether street railway or trunk railway, and not the character of motive power, which it employs," and again, "Rather the character of a railroad company is determined by the nature and extent and limits put upon its operation by law or otherwise and by the character and objects of its corporate creation as shown by its charter." The equipment and motive power of the class of railroads, which formerly were classed as street railroads, have so changed, as time has progressed, that the motive power and nature of their equipment have ceased to distinguish their class. In Diebold v. Kentucky Traction Company, *supra,* defining the term "street railway," it was said: "The term 'street railway' as used in section 163 of the state constitution, means and can only mean, applying to it a common sense interpretation, those street railroads, which before the introduction of electricity, used mules and horses as motor power for drawing the street cars over its street car tracks, for the use and convenience of the local public in a municipality—those street cars, that run along the streets of a city, picking up passengers here and there, and putting them off at street crossings at the termini of the street car companies, tracks within the municipality." In Louisville & Portland Railroad Company v. Louisville City Railway Company, 2 Duv. 175, it is said: "Street railway is dedicated to the more limited use of the local public for the more transient transportation of persons only, and within the limits of the city." The weight of authority seems to confine those railroads, which are denominated street railroads to such as are constructed and operated in the public streets of a city or town for the purpose of conveying passengers, from one place to another upon the streets, and within the limits of the municipality. These roads are distinguished from others, in that they acquire the franchise to use the streets of the municipality for the operation of their railroads from the municipality by a purchase of the franchise, after advertisement and at a public offering, while the interurban roads acquire their powers and privileges, among which is the power to exercise the right of eminent do-

main, from the state. Hence a railroad which extends
from a city far into the country to other towns and mu-
nicipalities and along and over public highways and
over private property, to other towns and cities ceases
to be a street railroad. The charter of the Cincinnati,
Covington & Erlanger Railway Company demonstrates
that it receives all of its powers and privileges from the
state, and under the general railroad laws of the state.
It does not operate upon the streets of any municipality,
except for a short distance at its beginning terminus,
and the right to do this, it acquired from the state,
subject to the municipality's right to regulate and con-
trol the manner of the use of the street. In the action
of Devou against it, 128 Ky. 768, this court held that
it was an interurban railway. It cannot escape its re-
sponsibilities as an interurban railroad, by claiming
or undertaking to operate it as a street railroad, or auth-
orizing any one else to do so, because in the contempla-
tion of the statute and the holdings of this court, ex-
empting street railroads from the application of sec-
tion 795, *supra,* it is impossible to operate a street rail-
road upon its road. It is contended that the South
Covington & Cincinnati Street Railway Company is
authorized by its charter to operate a street railroad
upon the road of the South Covington, Cincinnati &
Erlanger Railway Co., but an examination of the char-
ter does not seem to justify this contention, and if
authorized to operate the line, not being a street rail-
road, it would be required to comply with the statute,
in its operation. It is very clear that the Cov-
ington, Cincinnati & Erlanger Railway Company, being
an interurban road, with authority under its charter
to build an electric railroad ten miles in length, Devou
v. Covington, Cincinnati & Erlanger Ry. Co., *supra,*
it, if operating its own railway, would be amen-
able to the requirements of section 795, *supra.* Section
842a, Ky. Statutes. In Louisville Ry. Co. v. Com., 130
Ky. 738, discussing as to what railroads, section 795,
*supra,* was applicable to, it was said: "But interurban
railroads are required by law to do so (to furnish separ-
ate coaches for white and colored passengers) and they
can not evade the performance of this duty by leasing
or otherwise turning over the use of their lines to a
street railway or other railroads." In L. & N. R. R.
Co. v. Com., 120 Ky. 91, this court, discussing the obli-

gations of railroad corporations generally, said: ''But, in any event appellee can not be permitted to escape the performance of any duty or obligation imposed by its charter or the general laws of the state by transferring its road or any part thereof to a lessee.'' Hence, so long as the Cincinnati, Covington & Erlanger Railroad continues to be an interurban railroad, the persons or company operating railroad coaches upon it are amenable to the requirements of section 795, *supra,* and the corporation itself, if it authorizes any other person or company to operate the railroad, contrary to such statute, will be amenable to punishment under it. Louisville Railway Co. v. Com., *supra.*

The evidence shows that railroad coaches were operated upon the railroad, without compliance with the requirements of the law as to separate coaches, or separate compartments therein, and that such operation was by the South Covington & Cincinnati Street Railway Company. The evidence is, also, such as to prove that the Cincinnati, Covington & Erlanger Railway Company, either turned over its road to the street railway company, with full knowledge that it would be operated contrary to law and for the purpose of the road being so operated, or else the two companies are jointly engaged in the operation of the railway. In either event it is conclusive that the operation is being unlawfully made by the authority of the Cincinnati, Covington & Erlanger Railway Company. Under the facts proven, it is impossible to conclude that the road is being unlawfully operated, without the full concurrence of the latter company, and it is therefore amenable to the penalty, which is denounced in the statute. Louisville Ry. Co. v. Com., *supra.*

It is therefore ordered that the judgment in each case be affirmed.