## MORGAN *v.* VIRGINIA.

No. 704.   Argued March 27, 1946.—Decided June 3, 1946.

*William H. Hastie* and *Thurgood Marshall* argued the cause for appellant.   With them on the brief was *Leon A. Ransom.*

*Abram P. Staples,* Attorney General of Virginia, argued the cause and filed a brief for appellee.

Briefs were filed as *amici curiae* by *Gregory Hankin, Osmond K. Fraenkel* and *Arthur Garfield Hays* for the American Civil Liberties Union, and by *Harold A. Stevens* for the Workers Defense League, in support of appellant.

MR. JUSTICE REED delivered the opinion of the Court.

This appeal brings to this Court the question of the constitutionality of an act of Virginia,[1] which requires all passenger motor vehicle carriers, both interstate and intrastate,[2] to separate without discrimination [3] the white and colored passengers in their motor buses so that contiguous seats will not be occupied by persons of different races at the same time. A violation of the requirement of separation by the carrier is a misdemeanor.[4] The driver or other person in charge is directed and required to increase or decrease the space allotted to the respective races as may be necessary or proper and may require passengers to change their seats to comply with the allocation. The operator's failure to enforce the provisions is made a misdemeanor.[5]

These regulations were applied to an interstate passenger, this appellant, on a motor vehicle then making an interstate run or trip. According to the statement of fact by the Supreme Court of Appeals of Virginia, appellant, who is a Negro, was traveling on a motor common car-

---

[1] Virginia Code of 1942, §§ 4097z to 4097dd inclusive. The sections are derived from an act of General Assembly of Virginia of 1930. Acts of Assembly, Va. 1930, p. 343.

[2] *Id.,* §§ 4097z, 4097m, 4097s; *Morgan* v. *Commonwealth,* 184 Va. 24, 39, 34 S. E. 2d 491.

[3] *Id.,* § 4097aa.

[4] *Id.,* § 4097z; § 4097bb.

[5] *Id.,* § 4097bb.

rier, operating under the above-mentioned statute, from Gloucester County, Virginia, through the District of Columbia, to Baltimore, Maryland, the destination of the bus. There were other passengers, both white and colored. On her refusal to accede to a request of the driver to move to a back seat, which was partly occupied by other colored passengers, so as to permit the seat that she vacated to be used by white passengers, a warrant was obtained and appellant was arrested, tried and convicted of a violation of § 4097dd of the Virginia Code.[6] On a writ of error the conviction was affirmed by the Supreme Court of Appeals of Virginia. 184 Va. 24. The Court of Appeals interpreted the Virginia statute as applicable to appellant since the statute "embraces all motor vehicles and all

[6] "4097dd. Violation by passengers; misdemeanor; ejection.—All persons who fail while on any motor vehicle carrier, to take and occupy the seat or seats or other space assigned to them by the driver, operator or other person in charge of such vehicle, or by the person whose duty it is to take up tickets or collect fares from passengers therein, or who fail to obey the directions of any such driver, operator or other person in charge, as aforesaid, to change their seats from time to time as occasions require, pursuant to any lawful rule, regulation or custom in force by such lines as to assigning separate seats or other space to white and colored persons, respectively, having been first advised of the fact of such regulation and requested to conform thereto, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than five dollars nor more than twenty-five dollars for each offense. Furthermore, such persons may be ejected from such vehicle by any driver, operator or person in charge of said vehicle, or by any police officer or other conservator of the peace; and in case such persons ejected shall have paid their fares upon said vehicle, they shall not be entitled to the return of any part of same. For the refusal of any such passenger to abide by the request of the person in charge of said vehicle as aforesaid, and his consequent ejection from said vehicle, neither the driver, operator, person in charge, owner, manager nor bus company operating said vehicle shall be liable for damages in any court."

passengers, both interstate and intrastate." [7]   The Court of Appeals refused to accept appellant's contention that the statute applied was invalid as a delegation of legislative power to the carrier by a concurrent holding "that no power is delegated to the carrier to legislate . . . . The statute itself condemns the defendant's conduct as a violation of law and not the rule of the carrier." *Id.,* at 38. No complaint is made as to these interpretations of the Virginia statute by the Virginia court.[8]

The errors of the Court of Appeals that are assigned and relied upon by appellant are in form only two.   The first is that the decision is repugnant to Clause 3, § 8, Article I of the Constitution of the United States,[9] and the second the holding that powers reserved to the states by the Tenth Amendment include the power to require an interstate motor passenger to occupy a seat restricted for the use of his race.   Actually, the first question alone needs consideration for, if the statute unlawfully burdens interstate commerce, the reserved powers of the state will not validate it.[10]

We think, as the Court of Appeals apparently did, that the appellant is a proper person to challenge the validity of this statute as a burden on commerce.[11]   If it is an invalid burden, the conviction under it would fail.   The statute affects appellant as well as the transportation company.   Constitutional protection against burdens on com-

---

[7] *Morgan* v. *Commonwealth, supra,* 37.   Cf. *Smith* v. *State,* 100 Tenn. 494, 46 S. W. 566; *Alabama & Vicksburg R. Co.* v. *Morris,* 103 Miss. 511, 60 So. 11; *Southern R. Co.* v. *Norton,* 112 Miss. 302, 73 So. 1.

[8] Compare *Hebert* v. *Louisiana,* 272 U. S. 312, 317; *General Trading Co.* v. *Tax Comm'n,* 322 U. S. 335, 337.

[9] "Section 8.   The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; . . . ."

[10] *Case* v. *Bowles,* 327 U. S. 92, 101–102.

[11] Cf. *Edwards* v. *California,* 314 U. S. 160, 172, n. 1.

merce is for her benefit on a criminal trial for violation of the challenged statute. *Hatch* v. *Reardon,* 204 U. S. 152, 160; *Federation of Labor* v. *McAdory,* 325 U. S. 450, 463.

This Court frequently must determine the validity of state statutes that are attacked as unconstitutional interferences with the national power over interstate commerce. This appeal presents that question as to a statute that compels racial segregation of interstate passengers in vehicles moving interstate.[12]

The precise degree of a permissible restriction on state power cannot be fixed generally or indeed not even for one kind of state legislation, such as taxation or health or safety.[13]  There is a recognized abstract principle, however, that may be taken as a postulate for testing whether particular state legislation in the absence of action by Congress is beyond state power.  This is that the state legislation is invalid if it unduly burdens that commerce in matters where uniformity is necessary—necessary in the constitutional sense of useful in accomplishing a permitted purpose.[14]  Where uniformity is essential for the functioning of commerce, a state may not interpose its local regulation.[15]  Too true it is that the principle lacks in precision.  Although the quality of such a principle is abstract, its application to the facts of a situation created by the attempted enforcement of a statute brings about a specific determination as to whether or not the statute

---

[12] When passing upon a rule of a carrier that required segregation of an interstate passenger, this Court said, "And we must keep in mind that we are not dealing with the law of a State attempting a regulation of interstate commerce beyond its power to make." *Chiles* v. *Chesapeake & Ohio R. Co.,* 218 U. S. 71, 75.

[13] Cf. *Gwin, White & Prince* v. *Henneford,* 305 U. S. 434, 439; *Mintz* v. *Baldwin,* 289 U. S. 346, 352; *Welch Co.* v. *New Hampshire,* 306 U. S. 79, 84.

[14] *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761, 766–71.

[15] *Cooley* v. *Board of Wardens,* 12 How. 299, 319; *Minnesota Rate Cases,* 230 U. S. 352, 402; *Kelly* v. *Washington,* 302 U. S. 1, 10.

in question is a burden on commerce. Within the broad limits of the principle, the cases turn on their own facts.

In the field of transportation, there has been a series of decisions which hold that where Congress has not acted and although the state statute affects interstate commerce, a state may validly enact legislation which has predominantly only a local influence on the course of commerce.[16] It is equally well settled that, even where Con-

---

[16] *Statutes or orders dealing with safety of operations: Smith* v. *Alabama,* 124 U. S. 465 (Alabama statute requiring an examination and license of train engineers before operating in the state) ; *Nashville, C. & St. L. R. Co.* v. *Alabama,* 128 U. S. 96 (statute requiring examination of railroad employees as to vision and color blindness) ; *New York, N. H. & H. R. Co.* v. *New York,* 165 U. S. 628 (New York statute forbidding the use of furnaces or stoves in passenger cars and requiring guard-posts on railroad bridges) ; *Erb* v. *Morasch,* 177 U. S. 584 (municipal ordinance limiting speed of trains in city to 6 miles an hour) ; *Atlantic Coast Line R. Co.* v. *Georgia,* 234 U. S. 280 (Georgia statute requiring electric headlights on locomotives) ; *Morris* v. *Duby,* 274 U. S. 135 (weight restrictions on motor carriers imposed by order of Oregon highway commission) ; *Sproles* v. *Binford,* 286 U. S. 374 (size and weight restrictions on trucks imposed by Texas statute) ; *South Carolina Highway Dept.* v. *Barnwell Bros.,* 303 U. S. 177 (statute restricting weight and size of motor carriers) ; *Maurer* v. *Hamilton,* 309 U. S. 598 (Pennsylvania statute forbidding the use of its highways to any vehicle carrying any other vehicle over the head of the operator of the vehicle) ; *Terminal Assn.* v. *Trainmen,* 318 U. S. 1 (Illinois statute requiring cabooses on freight trains).

*Statutes or orders requiring local train service: Gladson* v. *Minnesota,* 166 U. S. 427 (state statute requiring intrastate train to stop at county seat to take on and discharge passengers) ; *Lake Shore & Michigan Southern R. Co.* v. *Ohio,* 173 U. S. 285 (statute requiring three trains daily, if so many are run, to stop at each city containing over 3,000 inhabitants as applied to interstate trains) ; *Atlantic Coast Line R. Co.* v. *North Carolina Corporation Comm'n,* 206 U. S. 1 (order regulating train service, particularly requiring train to permit connection with through trains at junction point) ; *Missouri Pacific R. Co.*

gress has not acted, state legislation or a final court order is invalid which materially affects interstate commerce.[17]

---

v. *Kansas*, 216 U. S. 262 (order directing the operation of intrastate passenger train service over specified route).

*Statutes dealing with employment of labor—full crew laws: Chicago, R. I. & P. R. Co.* v. *Arkansas*, 219 U. S. 453 (Arkansas full crew law applied to interstate trains); *St. Louis, I. M. & S. R. Co.* v. *Arkansas*, 240 U. S. 518 (Arkansas full crew laws applied to switching crews); *Missouri Pacific R. Co.* v. *Norwood*, 283 U. S. 249 (Arkansas full crew laws applied to freight and switching crews).

[17] *Statutes or orders dealing with safety of operations: Kansas City Southern R. Co.* v. *Kaw Valley Dist.*, 233 U. S. 75 (order requiring railroad to remove its bridges over river for flood control purposes); *South Covington & Cincinnati. R. Co.* v. *Covington*, 235 U. S. 537 (ordinances regulating the number of passengers to be carried in, the number of cars to be run and the temperature of an interstate street railway car invalid; those requiring rails on front and rear platform, ventilation and cleaning valid); *Seaboard Air Line R. Co.* v. *Blackwell*, 244 U. S. 310 (Georgia Blow Post Law requiring train to blow whistle and slow down almost to a stop at each grade crossing where numerous grade crossings were involved. Cf. *Southern R. Co.* v. *King*, 217 U. S. 524, where answer held insufficient to permit proof of burden of the statute on interstate commerce); *Southern Pacific Co.* v. *Arizona*, 325 U. S. 761 (statute limiting number of cars in freight train to 70 and passenger cars to 14).

*Statutes or orders requiring local train service: Illinois Central R. Co.* v. *Illinois*, 163 U. S. 142 (statute applied to require fast mail train to detour from main line in order to stop at station for the taking on and discharge of passengers); *Cleveland, C., C. & St. L. R. Co.* v. *Illinois*, 177 U. S. 514 (Illinois statute requiring interstate train to stop at each station); *Mississippi Railroad Comm'n* v. *Illinois Central R. Co.*, 203 U. S. 335 (order of commission requiring interstate train to stop at small town); *Atlantic Coast Line* v. *Wharton*, 207 U. S. 328 (South Carolina statute and railroad commission order requiring interstate train to stop at small town); *St. Louis Southwestern R. Co.* v. *Arkansas*, 217 U. S. 136 (statute and order requiring delivery of freight cars to local shippers); *Herndon* v. *Chicago, R. I. & P. R. Co.*, 218 U. S. 135 (statute requiring interstate train to stop at junction point); *Chicago, B. & Q. R. Co.* v. *Wisconsin Railroad Comm'n*, 237 U. S. 220

Because the Constitution puts the ultimate power to regulate commerce in Congress, rather than the states, the degree of state legislation's interference with that commerce may be weighed by federal courts to determine whether the burden makes the statute unconstitutional.[18] The courts could not invalidate federal legislation for the same reason because Congress, within the limits of the Fifth Amendment, has authority to burden commerce if that seems to it a desirable means of accomplishing a permitted end.[19]

This statute is attacked on the ground that it imposes undue burdens on interstate commerce. It is said by the Court of Appeals to have been passed in the exercise of the state's police power to avoid friction between the races. But this Court pointed out years ago "that a State cannot avoid the operation of this rule by simply invoking the convenient apologetics of the police power." [20] Burdens upon commerce are those actions of a state which directly "impair the usefulness of its facilities for such traffic." [21] That impairment, we think, may arise from other causes than costs or long delays. A burden may arise from a state statute which requires interstate passengers to order

(Wisconsin statute requiring interstate train to stop at villages containing 200 or more inhabitants); *Missouri, K. & T. R. Co.* v. *Texas,* 245 U. S. 484 (order requiring trains to start on time and fixing time allowed for stops at junctions en route); *St. Louis & S. F. R. Co.* v. *Public Service Comm'n,* 254 U. S. 535 (order requiring through trains to detour through a small town); *St. Louis-San Francisco R. Co.* v. *Public Service Comm'n,* 261 U. S. 369 (order requiring that interstate trains be stopped at small town).

[18] See *Southern Pacific Co.* v. *Arizona,* 325 U. S. at 770.

[19] Compare *United States* v. *Carolene Products Co.,* 304 U. S. 144, 146.

[20] *Kansas City Southern R. Co.* v. *Kaw Valley Dist.,* 233 U. S. 75, 79.

[21] *Illinois Central R. Co.* v. *Illinois,* 163 U. S. 142, 154.

their movements on the vehicle in accordance with local rather than national requirements.

On appellant's journey, this statute required that she sit in designated seats in Virginia.[22] Changes in seat designation might be made "at any time" during the journey when "necessary or proper for the comfort and convenience of passengers." This occurred in this instance. Upon such change of designation, the statute authorizes the operator of the vehicle to require, as he did here, "any passenger to change his or her seat as it may be necessary or proper." [23] An interstate passenger must if necessary repeatedly shift seats while moving in Virginia to meet the seating requirements of the changing passenger group. On arrival at the District of Columbia line, the appellant would have had freedom to occupy any available seat and so to the end of her journey.

Interstate passengers traveling via motor buses between the north and south or the east and west may pass through Virginia on through lines in the day or in the night. The large buses approach the comfort of pullmans and have seats convenient for rest. On such interstate journeys the enforcement of the requirements for reseating would be disturbing.

Appellant's argument, properly we think, includes facts bearing on interstate motor transportation beyond those immediately involved in this journey under the Virginia statutory regulations. To appraise the weight of the burden of the Virginia statute on interstate commerce, related statutes of other states are important to show whether there are cumulative effects which may make

---

[22] The Virginia Code of 1942, § 67, defines a colored person, for the purpose of the Code, as follows: "Every person in whom there is ascertainable any negro blood shall be deemed and taken to be a colored person . . . ." Provisions for vital statistics make a record of the racial lines of Virginia inhabitants. §§ 1574 and 5099a.

[23] § 4097bb.

local regulation impracticable. Eighteen states, it appears, prohibit racial separation on public carriers.[24] Ten require separation on motor carriers.[25] Of these, Alabama applies specifically to interstate passengers with an exception for interstate passengers with through tickets from states without laws on separation of passengers.[26] The language of the other acts, like this Virginia statute before the Court of Appeals' decision in this case, may be said to be susceptible to an interpretation that they do or do not apply to interstate passengers.

In states where separation of races is required in motor vehicles, a method of identification as white or colored must be employed. This may be done by definition. Any ascertainable Negro blood identifies a person as colored for purposes of separation in some states.[27] In the other states which require the separation of the races in

[24] Cal. Civ. Code (Deering), 1941, §§ 51–54; Colo. Stat. Ann., 1935, Ch. 35, §§ 1–10; Conn. Gen. Stat. (Supp. 1933), § 1160b; Ill. Rev. Stat., 1945, Ch. 38, §§ 125–128g; Ind. Stat. (Burns), 1933, §§ 10–901, 10–902; Iowa Code, 1939, §§ 13251–13252; Kan. Gen. Stat., 1935, § 21–2424; Mass. Laws (Michie), 1933, Ch. 272, § 98, as amended 1934; Mich. Stat. Ann., 1938, §§ 28.343, 28.344; Minn. Stat. (Mason), 1927, § 7321; Neb. Comp. Stat., 1929, § 23–101; N. J. Rev. Stat., 1937, §§ 10:1–2 to 10:1–7; N. Y. Civil Rights Law (McKinney), §§ 40–41; Ohio Code (Throckmorton), 1940, §§ 12940–12942; Pa. Stat. (Purdon), Tit. 18, §§ 4654 to 4655; R. I. Gen. Laws, 1938, Ch. 606, §§ 28–29; Wash. Rev. Stat. (Remington), 1932, § 2686 (semble); Wis. Stat., 1943, § 340.75.

[25] Ala. Code, 1940, Tit. 48, § 268; Ark. Stat., 1937 (Pope), §§ 6921–6927, Acts 1943, p. 379; Ga. Code, 1933, § 68–616; La. Gen. Stat. (Dart), 1939, §§ 5307–5309; Miss. Code, 1942, § 7785; N. C. Gen. Stat., 1943, § 62–109; Okla. Stat. Ann., 1941, Tit. 47, §§ 201–210; S. C. Code, 1942, § 8530–1; Tex. Pen. Code (Vernon), 1936, Art. 1659; Va. Code, 1942, §§ 4097z–4097dd.

[26] Ala. Code 1940, Tit. 48, § 268.

[27] Ala. Code, 1940, Tit. 1, § 2; Ark. Stat. (Pope), 1937, § 1200 (separate coach law); Ga. Code (Michie Supp.), 1928, § 2177; Okla. Const., Art. XXIII, § 11; Va. Code (Michie), 1942, § 67.

motor carriers, apparently no definition generally applicable or made for the purposes of the statute is given. Court definition or further legislative enactments would be required to clarify the line between the races. Obviously there may be changes by legislation in the definition.[28]

The interferences to interstate commerce which arise from state regulation of racial association on interstate vehicles has long been recognized. Such regulation hampers freedom of choice in selecting accommodations. The recent changes in transportation brought about by the coming of automobiles does not seem of great significance in the problem. People of all races travel today more extensively than in 1878 when this Court first passed upon state regulation of racial segregation in commerce. The factual situation set out in preceding paragraphs emphasizes the soundness of this Court's early conclusion in *Hall* v. *DeCuir*, 95 U. S. 485.

The *DeCuir* case arose under a statute of Louisiana interpreted by the courts of that state and this Court to require public carriers "to give all persons travelling in that State, upon the public conveyances employed in such business, equal rights and privileges in all parts of the conveyance, without distinction or discrimination on account of race or color." Page 487. Damages were awarded against Hall, the representative of the operator of a Mississippi river steamboat that traversed that river interstate from New Orleans to Vicksburg, for excluding in Louisiana the defendant in error, a colored person, from a cabin reserved for whites. This Court reversed for reasons well

[28] Compare Va. Code, 1887, § 49, providing that those who had one-fourth or more Negro blood were to be considered colored. This was changed in 1910 (Acts, 1910, p. 581) to read one-sixteenth or more. It was again changed in 1930 by Acts, 1930, p. 97, to its present form, i. e., any ascertainable Negro blood. See note 22, *supra*.

stated in the words of Mr. Chief Justice Waite.[29]   As our previous discussion demonstrates, the transportation diffi-

[29] 95 U. S. at 489:

"It was to meet just such a case that the commercial clause in the Constitution was adopted.   The river Mississippi passes through or along the borders of ten different States, and its tributaries reach many more.   The commerce upon these waters is immense, and its regulation clearly a matter of national concern. If each State was at liberty to regulate the conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship.   Each State could provide for its own passengers and regulate the transportation of its own freight, regardless of the interests of others.   Nay more, it could prescribe rules by which the carrier must be governed within the State in respect to passengers and property brought from without.   On one side of the river or its tributaries he might be required to observe one set of rules, and on the other another.   Commerce cannot flourish in the midst of such embarrassments.   No carrier of passengers can conduct his business with satisfaction to himself, or comfort to those employing him, if on one side of a State line his passengers, both white and colored, must be permitted to occupy the same cabin, and on the other be kept separate.   Uniformity in the regulations by which he is to be governed from one end to the other of his route is a necessity in his business, and to secure it Congress, which is untrammelled by State lines, has been invested with the exclusive legislative power of determining what such regulations shall be.   If this statute can be enforced against those engaged in inter-state commerce, it may be as well against those engaged in foreign; and the master of a ship clearing from New Orleans for Liverpool, having passengers on board, would be compelled to carry all, white and colored, in the same cabin during his passage down the river, or be subject to an action for damages, 'exemplary as well as actual,' by any one who felt himself aggrieved because he had been excluded on account of his color."

See *Louisville, N. O. & T. R. Co.* v. *Mississippi,* 133 U. S. 587, 590–91.

A regulation of the number of passengers on interstate street cars was held invalid in *South Covington & Cincinnati R. Co.* v. *Covington,* 235 U. S. 537, 547.   This Court said at 547–48:

"If Covington can regulate these matters, certainly Cincinnati can, and interstate business might be impeded by conflicting and varying regulations in this respect, with which it might be impossible to comply.   On one side of the river one set of regulations might be enforced, and on the other side quite a different set, and both seeking to control a practically continuous movement of cars. As was said in *Hall* v. *DeCuir,* 95 U. S. 485, 489, 'commerce cannot flourish in the midst of such embarrassments.' "

culties arising from a statute that requires commingling of the races, as in the *DeCuir* case, are increased by one that requires separation, as here.[30] Other federal courts have looked upon racial separation statutes as applied to interstate passengers as burdens upon commerce.[31]

In weighing the factors that enter into our conclusion as to whether this statute so burdens interstate commerce or so infringes the requirements of national uniformity as to be invalid, we are mindful of the fact that conditions

[30] *South Covington & Cincinnati R. Co.* v. *Kentucky*, 252 U. S. 399, relied upon by appellee, does not decide to the contrary of the holding in *Hall* v. *DeCuir*. In that case a carrier corporation was convicted in the Kentucky courts of violation of a state statute that required it to furnish cars with separate compartments for white and colored. It operated street cars interstate over the lines of another corporation that owned tracks that were wholly intrastate. The Court of Appeals of Kentucky held the conviction good on the ground that the offending act was the operation of the intrastate railroad in violation of the state statute. It was said that the statute did not apply to an interstate passenger. *South Covington & Cincinnati Street R. Co.* v. *Commonwealth*, 181 Ky. 449, 454, 205 S. W. 603. The Court of Appeals referred, with continual approval, at that point to *Chiles* v. *Chesapeake & Ohio R. Co.*, 125 Ky. 299, 304: "It is admitted that sections 795–801 of the Kentucky Statutes, requiring all railroad companies to furnish separate coaches for transportation of white and colored passengers, and imposing upon the company and conductors a penalty for refusing or failing to carry out the provisions of the law, does not apply to appellant, who was an interstate passenger; it being conceded that the statute is only operative within the territorial limits of this State, and effective as to passengers who travel from one point within the State to another place within its border." This Court accepted this application of the state statute and said it "is not a regulation of interstate commerce." Page 403. Probably what was meant by the opinions was that under the Kentucky act the company with wholly intrastate mileage must operate cars with separate compartments for intrastate passengers.

[31] *Anderson* v. *Louisville & N. R. Co.*, 62 F. 46, 48; *Washington, B. & A. R. Co.* v. *Waller*, 53 App. D. C. 200, 289 F. 598. See also *Hart* v. *State*, 100 Md. 595, 60 A. 457; *Carrey* v. *Spencer*, 36 N. Y. Supp. 886.

vary between northern or western states such as Maine or Montana, with practically no colored population; industrial states such as Illinois, Ohio, New Jersey and Pennsylvania with a small, although appreciable, percentage of colored citizens; and the states of the deep south with percentages of from twenty-five to nearly fifty per cent colored, all with varying densities of the white and colored races in certain localities. Local efforts to promote amicable relations in difficult areas by legislative segregation in interstate transportation emerge from the latter racial distribution. As no state law can reach beyond its own border nor bar transportation of passengers across its boundaries, diverse seating requirements for the races in interstate journeys result. As there is no federal act dealing with the separation of races in interstate transportation, we must decide the validity of this Virginia statute on the challenge that it interferes with commerce, as a matter of balance between the exercise of the local police power and the need for national uniformity in the regulations for interstate travel. It seems clear to us that seating arrangements for the different races in interstate motor travel require a single, uniform rule to promote and protect national travel. Consequently, we hold the Virginia statute in controversy invalid.

*Reversed.*

MR. JUSTICE RUTLEDGE concurs in the result.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, concurring.

The Commerce Clause of the Constitution provides that "Congress shall have power . . . to regulate commerce . . . among the several States." I have believed, and still believe, that this provision means that Congress

can regulate commerce and that the courts cannot. But in a series of cases decided in recent years this Court over my protest has held that the Commerce Clause justifies this Court in nullifying state legislation which this Court concludes imposes an "undue burden" on interstate commerce.[1] I think that whether state legislation imposes an "undue burden" on interstate commerce raises pure questions of policy, which the Constitution intended should be resolved by the Congress.

Very recently a majority of this Court reasserted its power to invalidate state laws on the ground that such legislation put an undue burden on commerce. *Nippert* v. *Richmond, supra; Southern Pacific Co.* v. *Arizona, supra.* I thought then, and still believe, that in these cases the Court was assuming the role of a "super-legislature" in determining matters of governmental policy. *Id.,* at 788, n. 4.

But the Court, at least for the present, seems committed to this interpretation of the Commerce Clause. In the *Southern Pacific Company* case, the Court, as I understand its opinion, found an "undue burden" because a State's requirement for shorter trains increased the cost of railroad operations and thereby delayed interstate commerce and impaired its efficiency. In the *Nippert* case a small tax imposed on a sales solicitor employed by concerns located outside of Virginia was found to be an "undue burden" even though a solicitor for Virginia concerns engaged in the same business would have been required to pay the same tax.

So long as the Court remains committed to the "undue burden on commerce formula," I must make decisions under it. The "burden on commerce" imposed by the

---

[1] *Nippert* v. *Richmond,* 327 U. S. 416; *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761; *McCarroll* v. *Dixie Greyhound Lines,* 309 U. S. 176; *Gwin, White & Prince* v. *Henneford,* 305 U. S. 434; *Adams Mfg. Co.* v. *Storen,* 304 U. S. 307.

Virginia law here under consideration seems to me to be of a far more serious nature than those of the *Nippert* or *Southern Pacific Company* cases. The *Southern Pacific Company* opinion, moreover, relied in part on the rule announced in *Hall* v. *DeCuir*, 95 U. S. 485, which case held that the Commerce Clause prohibits a state from passing laws which require that "on one side of a State line . . . passengers, both white and colored, must be permitted to occupy the same cabin, and on the other be kept separate." The Court further said that "uniformity in the regulations by which . . . [a carrier] is to be governed from one end to the other of his route is a necessity in his business" and that it was the responsibility of Congress, not the states, to determine "what such regulations shall be." The "undue burden on commerce formula" consequently requires the majority's decision. In view of the Court's present disposition to apply that formula, I acquiesce.

MR. JUSTICE FRANKFURTER, concurring.

My brother Burton has stated with great force reasons for not invalidating the Virginia statute. But for me *Hall* v. *DeCuir*, 95 U. S. 485, is controlling. Since it was decided nearly seventy years ago, that case on several occasions has been approvingly cited and has never been questioned. Chiefly for this reason I concur in the opinion of the Court.

The imposition upon national systems of transportation of a crazy-quilt of State laws would operate to burden commerce unreasonably, whether such contradictory and confusing State laws concern racial commingling or racial segregation. This does not imply the necessity for a nationally uniform regulation of arrangements for passengers on interstate carriers. Unlike other powers of Congress (see Art. I, § 8, cl. 1, concerning "Duties, Imposts

and Excises"; Art. I, § 8, cl. 4, concerning "Naturalization"; Art. I, § 8, cl. 4, concerning "Bankruptcies"), the power to regulate commerce does not require geographic uniformity. Congress may devise a national policy with due regard to varying interests of different regions. *E. g.,* 37 Stat. 699, 27 U. S. C. § 122; *Clark Distilling Co.* v. *Western Maryland R. Co.,* 242 U. S. 311; 45 Stat. 1084, 49 U. S. C. § 60; *Whitfield* v. *Ohio,* 297 U. S. 431. The States cannot impose diversity of treatment when such diverse treatment would result in unreasonable burdens on commerce. But Congress may effectively exercise its power under the Commerce Clause without the necessity of a blanket rule for the country.

Mr. Justice Burton, dissenting.

On the application of the interstate commerce clause of the Federal Constitution to this case, I find myself obliged to differ from the majority of the Court. I would sustain the Virginia statute against that clause. The issue is neither the desirability of the statute nor the constitutionality of racial segregation as such. The opinion of the Court does not claim that the Virginia statute, regulating seating arrangements for interstate passengers in motor vehicles, violates the Fourteenth Amendment or is in conflict with a federal statute. The Court holds this statute unconstitutional for but one reason. It holds that the burden imposed by the statute upon the nation's interest in interstate commerce so greatly outweighs the contribution made by the statute to the State's interest in its public welfare as to make it unconstitutional.

The undue burden upon interstate commerce thus relied upon by the Court is not complained of by the Federal Government, by any state, or by any carrier. This statute has been in effect since 1930. The carrier concerned is operating under regulations of its own which conform

to the statute. The statute conforms to the policy adopted by Virginia as to steamboats (1900), electric or street cars and railroads (1902–1904).[1] Its validity has been unanimously upheld by the Supreme Court of Appeals of Virginia. The argument relied upon by the majority of this Court to establish the undue burden of this statute on interstate commerce is the lack of uniformity between its provisions and those of the laws of other states on the subject of the racial separation of interstate passengers on motor vehicles.

If the mere diversity between the Virginia statute and comparable statutes of other states is so serious as to render the Virginia statute invalid, it probably means that the comparable statutes of those other states, being diverse from it and from each other, are equally invalid. This is especially true under that assumption of the majority which disregards sectional interstate travel between neighboring states having similar laws, to hold "that seating arrangements for the different races in interstate motor travel require a *single, uniform rule to promote and protect national travel.*" (Italics supplied.) More specifically, the opinion of the Court indicates that the laws of the 10 contiguous states of Virginia, North Carolina, South Carolina, Georgia, Alabama, Mississippi, Louisiana, Arkansas, Texas and Oklahoma require racial separation of passengers on motor carriers, while those of 18 other states prohibit racial separation of passengers on public carriers. On the precedent of this case, the laws of the 10 states requiring racial separation apparently can be invalidated because of their sharp diversity from the laws in the rest of the Union, or, in a lesser degree, because of their diversity from one another. Such invalidation, on the ground

---

[1] Steamboats: Acts of 1900, p. 340; electric or street cars: Acts of 1902–1904, p. 990; railroads: Acts of 1902–1904, p. 987. Va. Code Ann., 1942, §§ 4022–4025; 3978–3983; 3962–3969.

of lack of nation-wide uniformity, may lead to questioning the validity of the laws of the 18 states now prohibiting racial separation of passengers, for those laws likewise differ sharply from laws on the same subject in other parts of the Union and, in a lesser degree, from one another. In the absence of federal law, this may eliminate state regulation of racial separation in the seating of interstate passengers on motor vehicles and leave the regulation of the subject to the respective carriers.

The present decision will lead to the questioning of the validity of statutory regulation of the seating of intrastate passengers in the same motor vehicles with interstate passengers. The decision may also result in increased lack of uniformity between regulations as to seating arrangements on motor vehicles limited to intrastate passengers in a given state and those on motor vehicles engaged in interstate business in the same state or on connecting routes.

The basic weakness in the appellant's case is the lack of facts and findings essential to demonstrate the existence of such a serious and major burden upon the national interest in interstate commerce as to outweigh whatever state or local benefits are attributable to the statute and which would be lost by its invalidation. The Court recognizes that it serves as "the final arbiter of the competing demands of state and national interests"[2] and that it must fairly determine, in the absence of congressional action, whether the state statute actually imposes such an undue burden upon interstate commerce as to invalidate that statute. In weighing these competing demands, if this Court is to justify the invalidation of this statute, it must, first of all, be satisfied that the many years of experience of the state and the carrier that are reflected in this

---

[2] *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761, 769.

state law should be set aside. It represents the tested public policy of Virginia regularly enacted, long maintained and currently observed. The officially declared state interests, even when affecting interstate commerce, should not be laid aside summarily by this Court in the absence of congressional action. It is only Congress that can supply affirmative national uniformity of action.

In *Southern Pacific Co.* v. *Arizona*, 325 U. S. 761, 768–769, 770, this Court speaking through the late Chief Justice said:

> "In the application of these principles some enactments may be found to be plainly within and others plainly without state power. But between these extremes lies the infinite variety of cases, in which regulation of local matters may also operate as a regulation of commerce, in which reconciliation of the conflicting claims of state and national power is to be attained only by some appraisal and accommodation of the competing demands of the state and national interests involved.[3]

> .        .        .        .        .

> "But in general Congress has left it to the courts to formulate the rules thus interpreting the commerce clause in its application, doubtless because it has appreciated the destructive consequences to the commerce of the nation if their [i. e. the courts'] protection were withdrawn, . . . and has been aware that in their application *state laws will not be invalidated without the support of relevant factual material which will 'afford a sure basis' for an informed judgment.*[4] . . . Meanwhile, Congress has accommodated its legislation, as have the states, to these rules as an established feature of our constitutional system. There has thus been left to the states wide scope for

---

[3] See *Parker* v. *Brown*, 317 U. S. 341, 362; *Di Santo* v. *Pennsylvania*, 273 U. S. 34, 44.

[4] *Terminal Assn.* v. *Trainmen*, 318 U. S. 1, 8.

the regulation of matters of local state concern, even though it in some measure affects the commerce, provided it does not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect to which uniformity of regulation is of predominant national concern." (Italics supplied.)

The above-quoted requirement of a factual establishment of "a sure basis" for an informed judgment by this Court calls for a firm and demonstrable basis of action on the part of this Court. In the record of this case there are no findings of fact that demonstrate adequately the excessiveness of the burden, if any, which the Virginia statute has imposed upon interstate commerce, during the many years since its enactment, in comparison with the resulting effect in Virginia of the invalidation of this statute.[5] The Court relies largely upon the recital of a nation-wide diversity among state statutes on this subject without a demonstration of the factual situation in those states, and especially in Virginia. The Court therefore is not able in this case to make that necessary "appraisal and accommodation of the competing demands of the state and national interests involved" which should be the foundation for passing upon the validity of a state statute of long standing and of important local significance in the exercise of the state police power.

---

[5] *Hall* v. *DeCuir*, 95 U. S. 485, does not require the conclusion reached by the Court in this case. The Louisiana statute in the *DeCuir* case could have been invalidated, at that time and place, as an undue burden on interstate commerce under the rules clearly stated by Chief Justice Stone in *Southern Pacific Co.* v. *Arizona, supra,* and as applied in this dissenting opinion. If the *DeCuir* case is followed without weighing the surrounding facts, it would invalidate today statutes in New England states prohibiting racial separation in seating arrangements on carriers, which would not be invalidated under the doctrine stated in the *Arizona* case.

The Court makes its own further assumption that the question of racial separation of interstate passengers in motor vehicle carriers requires national uniformity of treatment rather than diversity of treatment at this time. The inaction of Congress is an important indication that, in the opinion of Congress, this issue is better met without nationally uniform affirmative regulation than with it. Legislation raising the issue long has been, and is now, pending before Congress but has not reached the floor of either House.[6] The fact that 18 states have prohibited in some degree racial separation in public carriers is important progress in the direction of uniformity. The fact, however, that 10 contiguous states in some degree require, by state law, some racial separation of passengers on motor carriers indicates a different appraisal by them of the needs and conditions in those areas than in others. The remaining 20 states have not gone equally far in either direction. This recital of existing legislative diversity is evidence against the validity of the assumption by this Court that there exists today a requirement of a single uniform national rule on the subject.

It is a fundamental concept of our Constitution that where conditions are diverse the solution of problems arising out of them may well come through the application of diversified treatment matching the diversified needs as determined by our local governments. Uniformity of treatment is appropriate where a substantial uniformity of conditions exists.

---

[6] See H. R. 8821, 75th Cong., 3d Sess., 83 Cong. Rec. 74; H. R. 182, 76th Cong., 1st Sess., 84 Cong. Rec. 27; H. R. 112, 77th Cong., 1st Sess., 87 Cong. Rec. 13.