**CENTRAL DELIVERY SERVICE, a corporation, and Helper Services, Inc., a corporation, on behalf of themselves and all others similarly situated,**

v.

**Francis B. BURCH, Attorney General of the State of Maryland, and Henry Miller, Commissioner, Department of Labor and Industry.**

**Civ. No. 71-316-T.**

United States District Court,
D. Maryland.

Jan. 31, 1973.

---

functions, including the power to establish qualifications and maximum hours of service of employees and safety and operation of equipment, were transferred to the Secretary of Transportation in 1966.[2]

Plaintiffs seek a declaratory judgment and an injunction to prevent defendants, officials of the State of Maryland, from enforcing the overtime provisions of the Maryland Wage and Hour Law, as it read during the one year period from July 1, 1970, to July 1, 1971, with respect to employees "who fall within the coverage of 29 U.S.C. 213(b)(1)." That is the subsection of the Fair Labor Standards Act which directs that the provisions of § 207 (which deal with maximum hours and overtime payments) shall not apply with respect to "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49."

The relevant portion of § 304 provides:

"(a) It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

\* \* \* "

As noted above, all functions, powers and duties of the Commission under § 304(a)(1), to the extent that they relate to qualifications and maximum hours of service of employees and safety and operation of equipment, have been transferred to the Secretary of Transportation.

Seymour J. Spelman, Arlington, Va. (Frances G. Beck, Spelman & Wagner, Arlington, Va., and Harry K. Wolpoff, Silver Spring, Md., on the brief), for plaintiffs.

Thomas N. Biddison, Jr., Asst. Atty. Gen., Baltimore, Md. (Stanford D. Hess, Asst. Atty. Gen., Annapolis, Md., on the brief), for defendants.

THOMSEN, District Judge.

Plaintiffs are motor carriers having their principal office in Maryland and operating out of a terminal or garage in Maryland. Some of their operations are in interstate commerce, and plaintiffs are therefore subject to the provisions of Part II of the Interstate Commerce Act, 49 U.S.C. § 301 et seq., formerly known as the Motor Carrier Act, 1935, which vests in the Interstate Commerce Commission the regulation of the "transportation of passengers or property by motor carriers engaged in interstate or foreign commerce".[1] Some of those

---

1. 49 U.S.C. § 302(a).

2. Pub.L. 89–670, October 15, 1966, 80 Stat. 931.

Effective July 1, 1970, the Maryland Wage and Hour Law, Code, Art. 100, § 81 et seq., which until that time had contained provisions for minimum wages but not for overtime, was amended by adding to § 83 a new subsection, which provided:

"(3) All employees as may be subject to the provisions of this subtitle shall receive a wage of one and one-half (1½) times their usual hourly wage rate for any hours worked in excess of forty (40) hours during any work week." [3]

The following year, § 83(3) was amended to add the following material provision:

" * * * except that this subsection shall not apply to any of the following employees:

" * * * *

"(b) Any employee with respect to whom the United States Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of § 204 of the Federal Motor Carrier Act, 1935, * * *." [4]

As we have seen, the Fair Labor Standards Act contains a similar provision. 29 U.S.C. § 213(b)(1).

Plaintiffs' principal argument is: (1) that a major purpose of Congress in enacting the Motor Carrier Act was the creation of a national safety program, to be achieved in part through the establishment of maximum hours of service of employees of motor carriers engaged in interstate commerce; (2) that form-erly the Commission and now the Secretary have implemented that program by establishing qualifications and maximum hours of certain classes of employees; (3) that the overtime provision in the Maryland statute, as it read from July 1, 1970, to July 1, 1971, if applied to employees "with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of 49 U.S.C. 304" would conflict with the Congressional purpose expressed by the Motor Carrier Act and the Fair Labor Standards Act and would violate the Supremacy Clause of the Federal Constitution.

The test to be applied in determining the validity of this conclusion is whether the state regulation "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress". Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 141, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963); Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).[5]

No case precisely in point has been cited or found, but both sides rely on statements in Levinson v. Spector Motor Co., 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947). In that case the Court held that the Commission had power under § 204 of the Motor Carrier Act, 49 U.S.C. § 304, to establish qualifications and maximum hours of service with respect to a "checker" or "terminal foreman", a substantial part of whose activities consisted of doing, or immediately

3. Acts of 1970, Ch. 728.

4. Acts of 1971, Ch. 709.

5. In Hines v. Davidowitz, the Court said: "There is not—and from the very nature of the problem there cannot be—any rigid formula or rule which can be used as a universal pattern to determine the meaning and purpose of every act of Congress. This Court, in considering the validity of state laws in the light of treaties or federal laws touching the same subject, has made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference. But none of these expressions provides an infallible constitutional test or an exclusive constitutional yardstick. In the final analysis, there can be no one crystal clear distinctly marked formula. Our primary function is to determine whether, under the circumstances of this particular case, Pennsylvania's law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." 312 U.S. at 67, 61 S.Ct. at 404.

directing, the work of one or more "loaders" of freight for an interstate motor carrier, as such work had been defined by the Commission and found by it to affect the safety of operation;[6] and that such an employee is excluded by 29 U.S.C. § 213(b)(1) from the overtime compensation requirements of 29 U.S.C. § 207, although the Commission had not yet found it advisable to exercise its power affirmatively by establishing qualifications and maximum hours of service with respect to such employees. The court said:

"In comparable fields, Congress previously had prescribed safety equipment, limited maximum hours of service and imposed penalties for violations of its requirements. In those Acts, Congress did not rely upon increases in rates of pay for overtime service to enforce the limitations it set upon hours of service. While a requirement of pay that is higher for overtime service than for regular service tends to deter employers from permitting such service, it tends also to encourage employees to seek it. The requirement of such increased pay is a remedial measure adapted to the needs of an economic and social program rather than a police regulation adapted to the rigid enforcement required in a safety program." 330 U.S. at 657, 67 S.Ct. at 936.

The Court also stated that in Southland Co. v. Bayley, 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244 (1943), it had "recognized the Commission's power to find a need for its action and, having found it, to establish qualifications and maximum hours of service for employees of private motor carriers of property affecting the safety of operation of such carriers. It held that, under § 13(b)(1) of the Fair Labor Standards Act, the Commission's mere possession of that power, whether exercised or not, necessarily excluded all employees, with respect to whom the power existed, from the benefits of the

compulsory overtime provisions of § 7 of that Act". 330 U.S. at 661, 67 S.Ct. at 938. The opinion in *Levinson* continued:

"The logic of the situation is that Congress, as a primary consideration, has preserved intact the safety program which it and the Interstate Commerce Commission have been developing for motor carriers since 1936. To do this, Congress has prohibited the overlapping of the jurisdiction of the Administrator of the Wage and Hour Division, United States Department of Labor, with that of the Interstate Commerce Commission as to maximum hours of service. Congress might have done otherwise. It might have permitted both Acts to apply. There is no necessary inconsistency between enforcing rigid maximum hours of service for safety purposes and at the same time, within those limitations, requiring compliance with the increased rates of pay for overtime work done in excess of the limits set in § 7 of the Fair Labor Standards Act. Such overlapping, however, has not been authorized by Congress and it remains for us to give full effect to the safety program to which Congress has attached primary importance, even to the corresponding exclusion by Congress of certain employees from the benefits of the compulsory overtime pay provisions of the Fair Labor Standards Act." 330 U.S. at 661, 662, 67 S.Ct. at 938.

After discussing many interpretations and applications of 49 U.S.C. § 304 by the Commission, the Court stated that it had "set forth the Commission's record of supervision over this field of safety of operation to demonstrate not only the extent to which the Commission serves Congress in safeguarding the public with respect to qualifications, maximum hours of service, safety of operation and equipment of interstate motor carriers,

6. Ex parte No. MC-2, 28 M.C.C. 125, 138–139.

but to demonstrate the high degree of its competence in this specialized field which justifies reliance upon its findings, conclusions and recommendations." 330 U.S. at 676, 67 S.Ct. at 945. The Court continued:

"Before examining further the new issue presented by the facts of this case, it is important to recognize that, by virtue of the unique provisions of § 13(b)(1) of the Fair Labor Standards Act, we are *not* dealing with an exception to that Act which is to be measured by regulations which Congress has authorized to be made by the Administrator of the Wage and Hour Division, United States Department of Labor. Instead, we are dealing here with the interpretation of the scope of the safety program of the Interstate Commerce Commission, under § 204 of the Motor Carrier Act, which in turn is to be interpreted in the light of the regulations made by the Interstate Commerce Commission pursuant to that Act. Congress, in the Fair Labor Standards Act, does not attempt to impinge upon the scope of the Interstate Commerce Commission safety program. It accepts that program as expressive of a pre-existing congressionally approved project. Section 13(b)(1) of the Fair Labor Standards Act thus requires that we interpret the scope of § 204 of the Motor Carrier Act in accordance with the purposes of the Motor Carrier Act and the regulations issued pursuant to it. It is only to the extent that the Interstate Commerce Commission does *not* have power to establish qualifications and maximum hours of service pursuant to said § 204, that the subsequent Fair Labor Standards Act has been made applicable or its Administrator has been given congressional authority to act. This interpretation puts safety first, as did Congress. It limits the Administrator's authority to those 'employees of motor carriers whose activities do not affect the safety of operation.' No. MC–C–139, 16 M.C.C. 497." 330 U.S. at 676, 677, 67 S.Ct. at 945.

In the instant case the State officials argue that the Fair Labor Standards Act was adopted by the same legislative body which had passed the Motor Carrier Act, whereas the Maryland Wage and Hour Law was adopted by a different legislative body; that in exempting from the maximum hours and overtime provisions of the Federal Fair Labor Standards Act, employees with respect to whom the Secretary (formerly the Commission) has the power to establish qualifications and maximum hours of service pursuant to the provisions of 49 U.S.C. § 304, Congress was making a choice which the Maryland Legislature was not required to make, and did not make until July 1, 1971, one year after the adoption of the overtime provision involved in this case.

That argument should prevail unless the State law in question "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in adopting the Motor Carrier Act. Florida Lime and Avocado Growers, Inc. v. Paul, supra, 373 U.S. at 141, 83 S.Ct. at 1217; Hines v. Davidowitz, supra, 312 U.S. at 67, 61 S. Ct. 399, 85 L.Ed. 581. In Florida Lime and Avocado Growers, the Court said: "The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." 373 U.S. at 142, 83 S.Ct. at 1217.

Plaintiffs in this case have not met either of those tests.

The Secretary has adopted certain Motor Carrier Safety Regulations, 49 C. F.R.—Transportation, Parts 385 to 398,

inclusive.[7] Those Regulations include, inter alia, § 391.1 et seq., Qualifications of Drivers, and § 395.1 et seq., dealing with Hours of Service of Drivers. The latter sections specify maximum hours during which drivers may be on duty for various purposes during "seven consecutive days", during "eight consecutive days", and during "twenty-four consecutive hours". Those maxima exceed 40 hours a week. The maximum hours set by the Regulations are absolute, except in case of emergencies. § 395.11. There is no provision in the Motor Carrier Act or in the Regulations for premium pay for work over any specified number of hours, nor any prohibition of such premium pay.

In practice, some carriers pay a premium for work over an agreed number of hours; some do not. There does not appear to be any regular pattern; nor does it appear that any legal steps have been taken to prohibit such agreed payments.

The Secretary has adopted some regulations dealing with "Inspection and Maintenance", but has not specified any hours of service with respect to employees engaged in those activities; and he has not adopted any regulations dealing with some other classes of employees.

One of the general regulations, § 390.-30, provides: "Except as otherwise specifically indicated, Parts 390–397 of this subchapter are not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the persons subject thereto."

It appears therefore that even if the requirement of the 1970 Maryland Act that higher rates be paid for all work over 40 hours should be construed as affecting the safety of motor carrier operations, there is no provision in the Motor Carrier Act or the Regulations which would prevent its enforcement.

The fact that Congress has chosen to exclude from the overtime provisions of the Fair Labor Standards Act employees with respect to whom the Secretary has power to establish qualifications and maximum hours of service under the Motor Carrier Act does not mean that a provision for overtime pay for work over 40 hours, but within the maxima established by the Regulations, is inconsistent with the safety program. As we have seen, the Court held in *Levinson* that the requirement of increased pay for hours worked over 40 hours "is a remedial measure adapted to the needs of an economic and social program rather than a police regulation adapted to the rigid enforcement required in a safety program", 330 U.S. at 657, 67 S.Ct. at 936, citing the leading case of Overnight Motor Co. v. Missel, 316 U.S. 572, 577–578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942); and that "[t]here is no necessary inconsistency between enforcing rigid maximum hours of service for safety purposes and at the same time, within those limitations, requiring compliance with the increased rates of pay for overtime work done in excess of the limits set in § 7 of the Fair Labor Standards Act". 330 U.S. at 661, 67 S. Ct. at 938.

If Congress had intended that the overtime Regulations adopted under the Motor Carrier Act should be exclusive not only of any right to overtime under the Federal Fair Labor Standards Act, but also of any right to overtime under a private agreement or a State Wage and Hour Act, Congress could easily have so provided. It did not.

■ The 1970 Maryland law passes the tests established by Florida Lime and Avocado Growers, Inc. v. Paul, su-

---

7. Some minor modifications were made after July 1, 1971, but they do not affect the general scheme with which we are dealing in this case.

pra, and other Supreme Court cases. It does not stand as an obstacle to the accomplishment and execution of the full powers and objectives of Congress in adopting the Motor Carrier Act.

The other arguments presented by plaintiffs require little discussion. They argue:

(1) That if the 1970 Maryland requirement is permitted to stand, there would be a real possibility that there would be imposed upon the national system a crazy-quilt of State laws that would unreasonably burden commerce. The only opinion cited, a concurring opinion in Morgan v. Virginia, 328 U.S. 373, 388, 66 S.Ct. 1050, 90 L.Ed. 1317 (1946), a Jim Crow case, does not justify such a conclusion.

(2) That the Maryland law discriminates against Maryland-based motor carriers engaged in interstate commerce, and violates the Equal Protection Clause. Every Wage and Hour Act and many other statutes adopted by a State impose a burden of persons engaged in manufacturing or other businesses therein which are different from the burdens imposed on persons doing business in other States with different laws. The only case cited by plaintiffs on this point is Florida Lime and Avocado Growers, Inc. v. Paul, supra, 373 U.S. at 152, 83 S.Ct. 1210, 10 L.Ed.2d 248. The argument failed there, as it must here.

(3) That the amendment to the Maryland statute in 1971 requires the conclusion that the Maryland Legislature recognized that its original overtime pay regulation was in derogation of the federal law and thus was unconstitutional. There is no legislative history to support this argument, and it is at least equally plausible that the change was the result of effective lobbying. For this and other reasons, plaintiffs' argument must fall.

Judgment will be entered for defendants, denying the relief requested.