**PETTIS MOVING CO., INC., Appellant,**

v.

**Lillian ROBERTS, Industrial Commissioner of the State of New York, Appellee.**

**No. 487, Docket 85–7533.**

United States Court of Appeals, Second Circuit.

Argued Nov. 19, 1985.

Decided Feb. 10, 1986.

James L. Burke, Elmira, N.Y., for appellant.

Harvey M. Berman (Robert Abrams, Atty. Gen. of N.Y., Robert Hermann, Sol. Gen. of N.Y., William J. Kogan, Asst. Sol. Gen., John Q. Driscoll, Asst. Atty. Gen., of counsel), for appellee.

Before FEINBERG, Chief Judge, LUMBARD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Pettis Moving Co. ("Pettis") appeals from the order of the United States District Court for the Northern District of New York, Howard G. Munson, Chief Judge, denying its motion for summary judgment, granting the cross-motion by the defendant New York State Industrial Commissioner ("Commissioner") for summary judgment and dismissing the complaint. Appellant sought a declaration that a Commissioner's order directing Pettis to comply with New York's minimum wage statute was in conflict with the Motor Carrier Act of 1935 ("the Act"), 49 U.S.C. §§ 301–327 (since repealed), and an injunction against enforcement of such order. We affirm.

## BACKGROUND

Pettis is a New York corporation doing business as a motor carrier certified by the Interstate Commerce Commission ("ICC") and subject to regulation by the New York State Department of Transportation. An investigation by the Division of Labor Standards found that appellant had failed to pay certain of its employees at a premium rate (time and one-half) for work over and above forty hours per week. These employees were engaged in the interstate transportation of goods in appellant's trucks. On January 2, 1980, the Commissioner directed appellant to pay $1,357.69 to the Department of Labor, to be disbursed to appellant's employees found to be entitled thereto, and to comply in the future with the wage rates specified in the order.

1. The IBA states in its decision that the parties were represented by counsel during the hearing; that they were afforded a full opportunity to present documentary evidence, examine and cross-examine witnesses, and make statements relevant to the issues raised in the proceeding; and that counsel filed post-hearing memoranda.

2. Pursuant to N.Y.Lab. Law § 657(2) (McKinney 1977), Pettis appealed the IBA's decision to the New York Supreme Court, Appellate Division, Third Department. When appellant failed timely to perfect its appeal, the Commissioner moved to dismiss and appellant consented to dismissal. On March 23, 1982, the Appellate Division dismissed the appeal. Because the dis-

Pettis appealed the Commissioner's order to the Industrial Board of Appeals ("IBA"), alleging that the order was improper as a matter of law because the affected employees were engaged in interstate commerce and subject to the exclusive jurisdiction of the Secretary of Transportation in relation to maximum hours of service, and that the New York State Department of Labor lacked jurisdiction "to set maximum hours or a penalty for exceeding standard hours of employment for the affected employees." Following a formal hearing,[1] IBA issued its decision on January 28, 1981, affirming the Commissioner's order. The IBA expressly considered the question of federal preemption of state wage regulation of interstate motor carriers, concluding that federal regulation of hours worked by employees of interstate carriers was directed primarily to considerations of highway safety, and was not intended either to regulate wages or to preclude states from doing so. Appellant instituted this action in May 1982.[2]

## DISCUSSION

The Commissioner puts forth two grounds for affirming the district court.[3] First, she claims that because the issues before the federal court are identical to the issues decided by the IBA, this action is barred by the doctrines of issue and claim preclusion. Second, she argues that the Act does not preempt state regulation of overtime wages. Although it is the ordinary practice of this court to decide a res

missal was not on the merits, the state court proceeding has no res judicata effect on this action. *See Schanbarger v. New York State Comm'r of Social Servs.*, 99 A.D.2d 621, 472 N.Y.S.2d 175 (3d Dep't 1984); *DeRonda v. Greater Amsterdam School Dist.*, 91 A.D.2d 1088, 458 N.Y.S.2d 310 (3d Dep't 1983). Appellee does not make such a res judicata claim before us.

3. The record does not contain the reasoning behind Judge Munson's decision, which was issued without opinion. Appellee states in her brief that summary judgment was granted "on the ground that the action was barred by the doctrine of *res judicata,*" but she provides no basis for that statement.

judicata claim before reaching the merits, when the res judicata issue raises difficult and important questions of federalism and comity, and the merits can be readily decided in favor of the party urging preclusion, we think it better to avoid the unnecessary resolution of the res judicata question.[4]

Section 204(a) of the Act, 49 U.S.C. § 304(a),[5] gave the ICC power to set maximum hours of service for employees of interstate motor carriers. The courts have long held this power to be directed at highway safety, not economic or wage regulation. *See Morris v. McComb,* 332 U.S. 422, 431–32, 68 S.Ct. 131, 135–36, 92 L.Ed. 44 (1947); *Levinson v. Spector Motor Service,* 330 U.S. 649, 674–79, 67 S.Ct. 931, 944–46, 91 L.Ed. 1158 (1947). We find nothing that would indicate Congress intended to regulate economic competition through the Act.

■■■ Congress specifically exempted employees subject to ICC maximum hour regulations under section 304 from the overtime benefits of section 207 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (1982). *See* 29 U.S.C. § 213(b)(1) (1982). Appellant argues taht this exemption demonstrates that Congress intended to give the ICC exclusive regulatory authority over these employees. Traditional police powers of the states, however, are not superseded by federal acts unless that was the clear and manifest purpose of Congress. *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978), citing *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). None of the well-settled standards for finding preemption are shown here. The Act regulates safety by setting maximum numbers of hours to be worked. New York does not interfere with such regulation; it merely requires that an employer pay time and one-half for all hours over forty that its employees work. *See Williams v. W.M.A. Transit Co.,* 472 F.2d 1258, 1263–64 (D.C. Cir.1972); *Central Delivery Service v. Burch,* 355 F.Supp. 954, 959 (D.Md.), *aff'd mem.,* 486 F.2d 1399 (4th Cir.1973). As the Court stated in *Levinson,* 330 U.S. at 661, 67 S.Ct. at 938, "[t]here is no necessary inconsistency" in joint FLSA overtime wage regulation and ICC safety regulation. Congress did not prevent the states from regulating overtime wages paid to workers exempt from the FLSA. Section 218(a) of the FLSA, 29 U.S.C. § 218(a) (1982), explicitly permits states to set more stringent overtime provisions than the FLSA. *See Williams,* 472 F.2d at 1261; *Plouffe v. Farm & Ranch Equipment Co.,* 174 Mont. 313, 570 P.2d 1106, 1109 (1977) (farm implement workers exemption, 29 U.S.C. § 213(b)(10)(A)). In short, this court will not convert a federal law that regulates safety into one that preempts states from exercising their traditional powers of economic regulation.[6]

---

**4.** In *Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42, 46 (2d Cir.1985), this court recently held that a state quasi-judicial administrative decision, unreviewed in state court, bars a subsequent section 1983 action in federal court if the state courts would have given the administrative decision preclusive effect. Although the author of this opinion concurred in *Zanghi,* he now questions the correctness of that result. We note that the issue may be reviewed by the Supreme Court this term. *Elliott v. University of Tennessee,* 766 F.2d 982 (6th Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 522, 88 L.Ed.2d 455 (1985).

**5.** The events at issue in this action arose while the 1935 Act was in force. Pertinent portions of the Act were repealed by Pub.L. No. 95–473, § 4(b), Oct. 17, 1978. The relevant portions were ultimately reenacted with modifications in Pub.L. No. 97–449 (codified in scattered sections of 49 U.S.C.).

**6.** *Central Delivery Service,* 355 F.Supp. at 959, points out that Department of Transportation regulations do not even preempt state *safety* regulations that do not interfere with federal regulations. *See, e.g.,* 49 C.F.R. § 390.30 (1984).